Case 43.—ACTION BY H. D. FRISBIE AND OTHERS AGAINST LEANDER BERRY, TO ENFORCE A CONTRACT FOR THE SALE OF OIL AND OTHER MINERAL RIGHTS.—April 19.

### Berry v. Frisbie, &c.

120   337
c121   642
124   607

Appeal from Bracken Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Judgment for Plaintiffs. Defendant appeals. Reversed.

vol. 120—22

Berry v. Frisbie, &c.

Mines and Minerals—Option—Leasing Contract—Prospecting—
Deed — Specific Performance — Consideration —Validity—Em-
forcement—Unilateral Agreements.

1. Option—Leasing Contract—Prospecting for Minerals, Coal, Gas,
&c.—Deed—When Due—Construction of Contract—B., in con-
sideration of $1, leased to F. & Co. the right to go on his
land and prospect for oil, coal, gas and all other minerals,
the said F. & Co. to have four months from date of contract
to determine whether they would accept the grant, and if
accepted to so notify B. in writing, and to have two years
from the date of acceptance to prospect and locate said min-
erals, and as compensation to give to B. 10 per cent. of
the product in the dump at the mine. F. & Co. gave notice
of acceptance, sunk some wells on adjacent lands, finding
some oil and gas, and within two years applied to B. to make a
deed of conveyance to said mineral rights, which B. refused.
Held—That the contract when accepted bound the lessees to,
within the two years therefrom, explore the land by actu-
ally sinking a well or wells upon it. If oil or gas or coal
was found therein in paying quantities then the lessees were
bound to diligently work and operate same so as to bring
the product to a present market and so as to promptly yield
to the lessor his royalty; that unless the lessees did so
actually develop the land in question and in good faith and
diligence operate it, the lease should be deemed abandoned,
and in no event were the lessees entitled to a deed provided
for by the option, until, as the result of such actual develop-
ment within the life of the contract, gas, oil or coal was found
in paying quantities.

2. Contracts—Mutuality—Consideration—Validity—Enforcement—
Such contracts lack the mutuality essential to their validity.
A unilateral executory contract is, in law, nudum pactum,
and is unenforcible. Where it is left to one of the parties
to an agreement to choose whether he will proceed or aban-
don it, neither can specifically enforce its execution in equity,
nor is a recited consideration of $1 sufficient to uphold an
action for the specific enforcement of a contract otherwise
unsupported by consideration.

E. L. WORTHINGTON for appellant.

1. Reciprocity of obligation is essential to the validity of a
contract. (Litz v. Goosling, 93 Ky., 185.)

2. The consideration of one dollar recited in the paper sued
on, is a mere nominal consideration and will not support such an
agreement.

3. An agreement that can not be enforced against both parties will be enforced against neither.

### AUTHORITIES CITED.

Litz v. Goosling, 93 Ky., 185; Huggins v. Daley, 99 Fed. Rep., 606; Thornton on Oil and Gas, sec. 66; Donahue on Petroleum and Gas, sec. 155; Federal Oil Co. v. Western Oil Co., 112 Fed. Rep., 373; Marble Co. v. Ripley, 10 Wall., 339; Steelsmith v. Gartlan, 44 L. R. A., 107; Parish Fork Oil Co. v. Bridgewater Gas Co., 59 L. R. A., 566.

GEORGE DONEPHAN and W. S. PRYOR for appellees.

1. The only question presented in this case arises on the face of the petition. The consideration we think supports the grant and the writing evidences the sale of the oil and gas rights, subject to the conditions contained in the written contract.

2. While it is true the consideration of $1, if there was nothing else in this case, would be regarded as merely nominal, but the labor expended in exploring the territory and ascertaining where the oil would likely be found,was as much a consideration as if a well had been actually bored on appellant's land.

### AUTHORITIES CITED.

Adams v. Ore Knob Copper Co., 7 Fed. Rep., 634; Alleghany Oil Co. v. Snyder, 106 Fed Rep., —;Litz v. Goosling, 93 Ky., 186; Davis v. Wells, Fargo & Co., 109 U. S. S. C., 159, 26 L. Ed., 686; Thornton Oil & Gas, 66; Huggins v. Daley, 40 C. C. A., 112; Bacon v. Ky. Central Ry. Co., 95 Ky., 373, 44 L. R. A., 107.

OPINION BY JUDGE O'REAR—Reversing.

Appellees are oil prospectors. Appellant is the owner of the land upon which appellees had taken options to prospect for oil, gas, and other minerals. These options are identical in terms, except descriptions, and read as follows:

"Know all men by these presents, that Leander Berry for and in consideration of one ($1) dollar cash in hand paid, the receipt of which is hereby acknowledged, and for the consideration of the advantages to be derived by the said Leander Berry from the

development of the mineral resources of the lands
hereinafter described, have this day bargained and
sold to H. D. Frisbie, J. T. Sharrard and their as-
sociates to enter upon and prospect for coals,
ores, oils, gases and all other minerals, and to erect
the necessary machinery and sink the necessary
shafts, and do any and all other work neces-
sary to carry out the objects of this grant,
the right of dump, also the right of ingress
and egress to and from said lands or any part
thereof, but on the condition that said right is to
be used in a reasonable and prudent manner so as to
injure the said farm as little as possible.

"This sale is made upon these conditions: Said
H. D. Frisbie and his associates shall have four
(4) months from the date of this contract to deter-
mine and say whether H. D. Frisbie and his asso-
ciates will accept this grant, and will undertake, ac-
cording to the terms of same, to locate and prospect
for coals, ores, oils, gases and all other minerals on the
said lands, and if within the said four months said
H. D. Frisbie and his associates shall notify the said
Leander Berry of their intention to accept the terms
of this grant, and prospect for coals, ores, oils, gases
and other minerals, he and his associates shall have
two years from the date of the acceptance of grant
in which to prospect for and locate said minerals,
ores, oils, gases, &c. Should minerals, coals, ores, oils,
gases, &c., be found on the said land in quantities,
which in the judgment of the said H. D. Frisbie and
his associates or assigns will pay to work, the said
Leander Berry will on demand make the said H. D.
Frisbie and his associates or assignees a deed to the
said mineral, coal, ore, oil and gas privileges on the
following described land, with the privilege and right
to open mines, or wells, and erect buildings and ma-

chinery and make roads or ways, such as in the judgment of the said H. D. Frisbie and his associates is necessary for the successful operation of the said mines or wells, and the said H. D. Frisbie and his associates will timber the said mines and pay to the said Leander Berry, as compensation for the privileges granted, ten per cent. of the minerals. &c., in the dump at the mine, or ten per cent. of the oils and gases, as nearly as it can be ascertained as it comes from the ground. [Description of land.]'' * * *

Within the four months mentioned in the options, appellees notified appellant that they accepted the ''grant'' by a written notice as follows: ''Dear Sir: You are hereby notified that the undersigned accept the terms of your lease for the mineral privileges on your lands of date 19th Nov. 1901.''  Within two years thereafter they applied to appellant to make them a deed to the oil, gas, coal and other minerals that might be contained in the land. Appellant refused to make the deed, and this suit was brought by appellees to compel its execution.

Appellees had upon an adjacent tract of land, which probably adjoined appellant's farm, sunk five wells, in which they claim to have found oil and gas in quantities which, in their judgment, would pay to work. There is some conflict in the evidence as to the extent of this find, but, be that as it may, appellees' contention is that they have by this manner of development demonstrated to their own satisfaction that there are oil and gas on appellant's nearby lands, embraced in the option. Considerable testimony was adduced by appellees as to the manner in which they satisfied themselves of this fact. They undertook to show that appellee, Frisbie, was possessed of an unerring discernment in locating such wells,

although he had been at the business only three or
four years, and had never located any but the five
wells above alluded to. He said he had a theory that
had never failed to show where paying oil was, as well
as where it was not. He did not say, however, what
that theory or method was, except it was disclosed
that it in part at least consisted in the use of a forked
hazel switch, called a "water witch," which would
by some phenomenal attraction incline itself in the
hands of Frisbie to the hidden wells of oil, or may-
be of water, he could not say for certain which. It
seems that he used this switch on appellant's land,
and in this way in part satisfied himself that there
was oil there. Appellant did not deny to appellees
the right to explore his land by sinking wells thereon
within the two years given by the contract. On the
contrary, he said that he was willing that they should
do so. The option contracts are susceptible of two
possible constructions: One, that they did not bind
the lessees to sink any well upon the land, or to dem-
onstrate by actual, physical tests, that oil, gas, or
coal in paying workable quantities underlaid it. The
other is, that the lessees were bound to make such
tests. Of the first, which seems to be the construc-
tion placed on the contract by appellees, it would re-
sult in appellants being bound to convey by abso-
lute deed a very valuable element of his estate with-
out any consideration whatever; for, whether coal
or oil or gas existed in his land, the prospect of it
was of value to him. If it did exist, of course that
fact might become of great value to him. But if
his lessees were not bound in fact to sink a well or
wells upon the land to test its mineral properties,
yet could keep appellant and all others from doing
so, it would be in the power of the lessees to pre-
vent its development indefinitely or forever. In that

Berry v. Frisbie, &c.

way the lessor would get nothing from his lease; would get nothing for even the chance of finding minerals there. In this view of the contract, it does not bind the lessees either to sink a well upon the land or to work the wells if sunk, and if minerals should be found in paying quantities. They could in that way, though satisfied that the land did contain oil and gas, and though it be a fact that it did, get from it these properties without paying anything, by draining them off through wells tapping the same pools or veins on the adjacent lands. Or they could plug the holes, and indefinitely postpone working the wells. Such contracts lack the mutuality essential to their validity. A unilateral executory contract is in law a nudum pactum, and is unenforceable. Where it is left to one of the parties to an agreement to choose whether he will proceed or abandon it, neither can specifically enforce its execution in equity. (Litz v. Goosling, 93 Ky., 185, 14 Ky. Law Rep., 91, 19 S. W., 527, 21 L. R. A., 127; Federal Oil Co. v. Western Oil Co. [C. C. A.], 112 Fed., 373; Marble Co. v. Ripley, 10 Wall., 339, 19 L. Ed., 955.) Nor is the recited consideration of $1 sufficient to uphold an action for the specific enforcement of a contract otherwise unsupported by consideration. As was said in Federal Oil Co. v. Western Oil Co., supra, "The consideration would be so trifling, compared with the value of the leasehold interest, as to shock the moral sense." Any fact showing that the contract is unfair, unjust, and against good conscience will justify a court of equity in refusing to decree its performance. On the other hand, where a written contract can, from its context, be construed so as to be binding upon the parties to it, instead of not binding, the former construction is preferred, as it is not to be deemed that the parties have been to so much

care to do nothing. The deliberateness of entering into written engagements of itself implies a purpose to become bound by the making of an enforceable agreement, unless the very terms of the paper repel the idea. The purpose of these contracting parties must have been the finding of oil or gas in paying quantities on this land, if to be found, and their being worked so as to make money for each party. That was the point where their minds met. The owner of the soil could not have dreamt that he was putting it out of his power to ever develop or have developed the mineral possibilities of his farm; nor, if minerals were found, that it would be left to the exclusive discretion of the other party whether they would be brought into marketable condition. In construing a somewhat similar lease it was said in Huggins v. Daley, 40 C. C. A., 19, 99 Fed., 613, 48 L. R. A., 320: "The land owner is entitled to his royalty as promptly as it can be had. The danger of drainage from his small holding is increased by delay; and the resulting damage, not being susceptible of pecuniary measurement, is, therefore, not compensable. No such lease should be so construed as to enable the lessee, who has paid no consideration to hold it merely for speculative purposes, without doing what he stipulated to do, and what was clearly in the contemplation of the lessor when he entered into the agreement." And in Conrad v. Morehead, 89 N. C., 31, it was also held: "It would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold his term a considerable length of time without making any effort at all to mine for gold and other metals. Such a construction of the rights of the parties would enable him to prevent the lessor from getting his tolls under the express covenant to pay the same,

and deprive him of all opportunity to work the mine himself or permit others to do so. The law does not tolerate such practical absurdity, nor will it permit the possibility of such injustice.''

Our construction of this contract is that when accepted, as it was, within four months of its date, it bound the lessees to within two years from such acceptance explore the land described by actually sinking a well or wells upon it. If oil or gas or coal were found therein in paying quantities, then the lessees were bound to diligently work and operate same so as to bring the product to a present market, and so as to promptly yield to the lessor his royalty; and that, unless the lessees did so actually develop the land in question, and in good faith and diligence operate it, the lease should be deemed abandoned. (Parish Fork Oil Co. v. Bridgewater Gas Co., 51 W. Va., 583, 42 S. E., 655, 59 L. R. A., 566.) In no event were appellees entitled to the deed provided for by the option till, as the result of such actual development within the life of the contract, gas or oil or coal were found in paying quantities.

The judgment of the circuit court decreeing a specific execution of the contract by the making and delivery of deeds by appellant is reversed, and cause remanded for a judgment in conformity herewith.