[No. 7017. Decided February 27, 1908.]

M. C. ALLEN, *Respondent*, v. H. W. TREAT *et al.*,
*Appellants.*[1]

VENDOR AND PURCHASER—PERFORMANCE OF CONTRACT—RESCISSION
BY VENDOR—EVIDENCE—SUFFICIENCY. Evidence examined and held
to sustain findings that the purchaser of land had failed to comply
with the terms of the contract, warranting rescission by the vendor.

EVIDENCE—PAROL—WRITTEN CONTRACT—VENDOR AND PURCHASER—
TITLE—SUFFICIENCY—EXCUSE FOR NONPERFORMANCE. Parol evidence
is admissible to show that a written contract for the sale of land
had been induced by the vendee's agent, who knew that the vendors
would sell only for cash to be paid at once, by representing that the
vendees would take the land subject to the claims of squatters and
expedite the sale without the delay incident to a suit for their
removal from the land, although the same was not embraced in the

[1]Reported in 94 Pac. 102.

contract, which called for a good title; knowledge of the agent being imputed to the vendee; and possession by such squatters would be no excuse for failure to comply with the contract.

VENDOR AND PURCHASER—TITLE — SUFFICIENCY — ESTOPPEL — SPECIFIC PERFORMANCE. A vendee contracting for a good title to be conveyed within a few days, knowing of the possession of squatters, which was an apparent cloud but did not invalidate the title, is estopped from excusing his nonperformance on that ground, especially where, with the cloud still existing, he afterwards seeks specific performance, which accordingly will not be granted.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 25, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover possession of real property and to quiet title thereto.   Affirmed.

*John P. Hartman,* for appellants.

*W. T. Dovell,* for respondent.

CROW, J.—This action was commenced by M. C. Allen, a widow, against H. W. Treat and Olive Treat, his wife, to recover possession of land in King county, to quiet title thereto, and to cancel a written contract reading as follows:

"It is hereby mutually agreed by and between Mrs. M. C. Allen, of Seattle, Washington, party of the first part, and H. W. Treat, the party of the second part, that said party of the first part will sell to said party of the second part, his heirs or assigns, and the said party of the second part will purchase of said party of the first part, her heirs, executors or administrators [description of land].   (1)   The purchase price for said land is thirty-five hundred dollars, of which the sum of three hundred dollars has this day been paid as earnest, the receipt whereof is hereby acknowledged by said party of the first part, and the further sum of thirty-two hundred dollars to be paid within five days after delivery of abstract and warranty deed.   (2) Said land to be conveyed by a good and sufficient deed to said party of the second part, when said purchase price shall have been fully paid.   (3) Time is the essence of this contract.  (4) And the party of

the second part is to pay all taxes, assessments, and impositions that may be legally levied or become due upon said property after this date. (5) If the said party of the second part fail to pay the whole or any part of said purchase price and interest according to the terms above specified, then the said party of the first part may, if she so elect, rescind this contract, and in that case all payments made by said party shall be forfeited. (6) Abstract of title to be satisfactory to second party, or deposit to be returned.

"Witness our hands and seals in duplicate this 7th day of February, A. D. 1906.          M. C. Allen.     (Seal)
                                              "H. W. Treat.     (Seal)"

The complaint alleges that the defendants had failed to perform the conditions of the contract; that they did, for five days after delivery of the abstract and warranty deed and at all times, neglect and refuse to pay the $3,200, remainder of purchase price, as agreed; that they had wrongfully taken possession, and that they had caused the contract to be recorded, casting a cloud upon the title. The defendants in their answer and cross-complaint alleged that the contract was executed, acknowledged, and recorded; that about ten days after its execution the plaintiff delivered to the defendant H. W. Treat an abstract of title, which he returned within five days, calling plaintiff's attention to certain defects; that after a few days plaintiff agreed to perfect the title by bringing an action to remove the cloud thereon; that upon such assurance and the bringing of the action, the defendants agreed and were ready to complete the transaction and pay the purchase money to one E. B. Cox, the plaintiff's agent; that the agent was then unable to find plaintiff who had left the city of Seattle for the state of California; that defendants were thereafter at all times ready and willing to pay the purchase price and accept a warranty deed; that the delay in closing the deal resulted solely from the fault of the plaintiff; that about March 1, 1906, the defendant H. W. Treat attempted to make a tender to plaintiff's agent, the First National Bank of Seattle, she having left a deed with the bank;

that defendant demanded the deed, but that the bank refused
to deliver the same except upon the payment of a larger sum,
to wit, $4,700, and that after plaintiff's return to the state of
Washington, the defendant H. W. Treat demanded a deed
and offered to pay the purchase money, but that plaintiff then
refused to convey.    Upon these allegations the defendants
asked a decree of specific performance.

The trial court found that the defendants entered upon the
land without right or title, and ousted plaintiff; that they had
at all times failed to perform the contract; that they failed
for five days after delivery of the abstract and warranty deed
to pay the stipulated price; that they had caused the contract
to be recorded, casting a cloud upon plaintiff's title; that the
said E. B. Cox acted as purchasing agent for the defendant
H. W. Treat, being authorized by him to conduct all negotia-
tions looking to the purchase of the property; that at the
time of making the contract E. B. Cox had full knowledge
of the condition of the title; and that he and the defendant
H. W. Treat thereupon agreed to take the existing title and
pay the stipulated price therefor; that about February 10,
1906, the plaintiff delivered an abstract of title to E. B. Cox,
agent for H. W. Treat, which disclosed that the plaintiff held
a clear title to the land; that subsequently the plaintiff exe-
cuted a warranty deed to H. W. Treat and deposited the same
with the First National Bank of Seattle for delivery upon
receipt of the purchase price, and notified the defendant
H. W. Treat thereof; that the deed remained with the bank
for delivery, with the knowledge of E. B. Cox and H. W.
Treat, until February 19, 1906; that subsequent to the de-
livery of the abstract and prior to February 19, 1906, H. W.
Treat and E. B. Cox were notified by plaintiff that she elected
to rescind the contract unless prompt payment of the stipu-
lated purchase money was made; that the defendants never at
any time prior to the commencement of this action tendered
or offered to pay the sum of $3,200, or any part thereof;
that at the time of depositing the deed the plaintiff, with de-

fendant's knowledge, constituted the First National Bank of Seattle her agent to deliver the deed and receive the purchase money; that after February 23, 1906, E. B. Cox, agent for H. W. Treat, notified the First National Bank in writing that the title to the property would not be accepted; that at no time prior thereto had E. B. Cox or H. W. Treat, or either of them, made any objection to the title, although its condition was at all times known to them; that the contract was not at any time modified in its terms, and that on February 23, 1906, the plaintiff notified H. W. Treat that she had rescinded the contract. Upon these findings, conclusions of law were made, and a decree was entered cancelling the contract, quieting plaintiff's title, and awarding her possession of the land. The defendants have appealed.

The controlling question before us is whether these findings are sustained by the evidence. We think they are, and that they authorized the final decree. The evidence shows that the contract was procured by E. B. Cox, who called upon respondent for the purpose of learning whether she would sell the land, he telling her that he could make a sale. The respondent objected to selling on account of certain squatters who were upon the land without right or title, and in substance stated that, as she might experience considerable delay in removing them, and as she would only sell for cash, the purchase money to be promptly paid, she hesitated to make a contract and tie up the land. Mr. Cox, in substance, replied that he knew of the possession of the squatters; that he cared nothing about them; that he owned adjoining land under the same conditions; that he would not hesitate to make a warranty deed therefor, and that his purchaser would take the land subject to such possession, the title being otherwise good. Relying upon this promise the respondent executed the contract.

Appellants do not now claim, nor did they ever claim, that the title was otherwise defective, or that the squatters had any

legal or equitable rights. They do claim that Mr. Cox was agent for respondent, and that they are not bound by his acts, while she insists that he represented appellants. Most of the negotiations were conducted through him, and the question of his agency therefore becomes an important one. It is conceded that respondent was to allow him a commission out of the $3,200 purchase money to be paid by appellants, yet the trial court found he was purchasing agent for H. W. Treat. Although the evidence was conflicting upon this issue, we conclude that its preponderance sustains the finding. It being established that Cox was acting as purchasing agent for H. W. Treat, it follows that the communications made to him import knowledge to appellants, and that transactions had with him, within the scope of his authority, were binding upon them.

Appellants contend that the trial court erred in admitting evidence of the respondent, wherein she testified that, before executing the contract, she mentioned the possession of the squatters to appellants' agent; that he waived any objection on account thereof; that he stated his principal, H. W. Treat, would accept the title subject to such possession, if otherwise perfect, and that she relied upon such promise in making the sale. They insist that such evidence tended to vary the written contract which by its terms indicates that the respondent was to convey, and the appellants were to receive, a perfect title, citing *Miller v. Philips & Co.*, 44 Wash. 226, 87 Pac. 264, and other cases. The evidence was properly admitted. There is no question but that the contract as drawn admits of the construction for which the appellants contend. It is also the rule that its terms may not be varied by oral testimony. The evidence here mentioned was not admitted for any such purpose. The appellant H. W. Treat was exceedingly anxious to purchase this particular land. It appears that he was buying other contiguous property from various owners. He evidently needed it for some business enterprise. The respondent had not offered it for sale, nor did she want to

sell unless the deal could be expedited, the purchase money promptly paid, and the purchaser would consent to accept an otherwise good title, subject to the wrongful possession of the squatters. The appellants' agent, purchasing for them, was advised of this situation, and in substance assured her that appellants would so take the land subject to such possession without making objection to the title on account thereof. Although this stipulation is not incorporated in the written contract, the respondent relied upon it when making the sale, which she otherwise would not have made. Yet the only objection the appellants ever interposed to the title as an excuse for their delay in making payment was the possession of these squatters. They permitted their agent to thus lead the respondent into making the contract, which stipulated that time should be of its essence, and then, on the identical objection waived, attempted to tie up land shown to be rapidly advancing in value, claiming the right to delay payment of the purchase money until the title could be quieted against the squatters. The respondent was entitled to show these occurrences as disclosing acts of the appellants which should estop them from making their present contention.

Other evidence shows that one of the squatters promptly executed a quitclaim deed to respondent; that thereafter the appellants still rejected the title, or rather delayed payment on account of the possession of the other squatters; that they did not, however, surrender their contract, but that their agent Cox filed it for record when appellants were five days in default, and after the respondent had notified them of her intention to rescind. They also seized possession of at least a portion of the land. They now ask specific performance to compel the respondent to convey the identical title which they then refused. In other words, they claim they made no default in payment of purchase money because of the possession of the squatters. Yet they now offer to make payment, and ask for the title subject to such possession. True, they assert there was an agreement that the respondent was to commence

an action to perfect her title, in consideration of which they agreed to accept the same. This contention, however, is not sustained by the evidence. The respondent did institute such an action against the squatters. That action, however, was commenced after she had notified the appellants of her rescission of the contract. It was brought for her own benefit, and not in pursuance of any supplemental agreement with the appellants. Although her action against the squatters was still pending, no judgment quieting her title had been obtained therein at the time of the trial of this action, wherein appellants are seeking specific performance. Under these circumstances every principle of equity would seem to forbid that appellants should be entitled to compel a conveyance of the identical title which in the first instance they deliberately rejected. *Goldthwait v. Lynch,* 9 Utah 186, 33 Pac. 699.

When, as here, a purchaser contracts for good title to be conveyed within a very few days, at the time knowing it will be impossible for his vendor to strictly give such title within the time named, he should thereafter be estopped from basing an excuse for his nonperformance of the contract upon a defect previously known to him, which although an apparent cloud, does not in reality invalidate the title, especially when he afterwards comes into a court of equity asking specific performance to compel a conveyance of the same title, subject to such cloud.

In *Leonard v. Woodruff,* 23 Utah 494, 65 Pac. 199, the first syllabus, which states the substance of the opinion, reads as follows:

"Where a vendee, on entering into a written contract for the sale of real estate, knows that there is a squatter in possession of a portion of the property, and the written contract does not refer thereto, or to the character of the vendor's title, there is no implied contract to furnish a good and marketable title as against such squatter."

See, also, *Thompson v. Hawley,* 14 Ore. 199, 12 Pac. 276: *Newark Sav. Inst. v. Jones,* 37 N. J. Eq. 449; *May v. Ivie,* 68 Tex. 381, 4 S. W. 641.

It is unnecessary to further discuss the appellants' contentions or assignments of error. Under the findings made by the trial court, which we have approved, appellants are not entitled to a decree of specific performance. On the other hand, the respondent, who tendered timely performance as fully, completely, and equitably as could have been demanded or required of her, is entitled to the final decree which has been entered in her favor.

The judgment is affirmed.

HADLEY, C. J., MOUNT, and RUDKIN, JJ., concur.

DUNBAR, ROOT, and FULLERTON, JJ., took no part.