[No. 7385. Decided September 16, 1908.]

## J. B. JOHNSON, *Appellant*, v. MARCELLUS LARA *et al.*, *Respondents.*[1]

SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—CONTRACTS—TERMINATION—WAIVER OF RIGHTS BY REJECTING TITLE. Where a contract to convey land provided that, if the vendors could not make a marketable title within a specified time after objections pointed out by the vendee, "the contract shall terminate and be at an end," the vendee is not entitled to specific performance after refusing to accept the title offered and insisting upon objections to the title in particulars which the vendors could not and would not make good, six months after the vendors had, for that reason, rescinded the contract; since his right to specific performance terminated on his rejection of the title and rescission of the contract.

Appeal from a judgment of the superior court for King county, Morris, J., entered January 9, 1908, dismissing upon the merits an action for specific performance, after a trial before the court without a jury. Affirmed.

*Godman & Embree* and *Farrell, Kane & Stratton*, for appellant.

*James Kiefer* and *John G. Barnes*, for respondents.

MOUNT, J.—This action was brought by the plaintiff to enforce specific performance of a contract for the purchase of two hundred and sixty-seven acres of land in King county. After issues were joined, the cause was tried to the court. No findings of fact were made, but the action was dismissed as to plaintiff, and a decree quieting defendants' title was entered. The plaintiff appeals.

It appears that respondents Lara and wife were, on September 15, 1906, the owners of the land in question. On that date they entered into a written contract with the appellant Johnson, whereby they agreed to sell and convey to Johnson the lands in controversy for the price of $50,000.

[1]Reported in 97 Pac. 231.

At the time the contract was signed, Johnson paid $500 on the purchase price. The contract provided that the vendors Lara and wife should furnish to the vendee an abstract of title, and that the vendee should have twenty days thereafter to examine the same and notify the vendors of any defects or objections to the title of the land. The contract also provided as follows:

"In the event the title to said property or any part thereof is not good, marketable and merchantable, or is not made good, marketable and merchantable by the said first parties (Lara and wife) within a reasonable time after objections to such title have been pointed out as aforesaid by the second party (Johnson) his heirs or assigns, then the said first party shall, upon demand therefor, pay back to the said second party, his heirs or assigns, the said sum of $500, and in that event this contract shall terminate and be at an end."

After this contract was entered into, the respondents Lara and wife had an abstract of title prepared, and the same was delivered to appellant. Thereafter, and within twenty days, the abstract was examined and forty-six objections were made to the title by appellant. On October 10, 1906, the appellant and respondent Marcellus Lara met and considered the objections made to the title. The evidence is in conflict as to all that transpired at this meeting. It is clear, however, that the respondent Lara insisted that the title was good, with the exception of two certain mortgages and an option contract which he agreed to release, and that the other objections were frivolous; that it would be impossible for him to meet them; and that he could not and would not do so. It is also clear that the appellant insisted on many objections and that the title was not good and was not satisfactory to him. Thereupon the respondent Lara notified appellant that, unless he paid the balance due in ten days as provided by the contract, the contract would be forfeited. The respondent, after the expiration of ten days, treated the contract as at an end. On February 18, 1907, the respondents Lara and

wife sold and conveyed the property to the respondent Seattle Country Club, for $54,000. Thereafter on April 19, 1907, the appellant tendered to Lara and wife the balance of the purchase price according to his contract, and demanded a conveyance of the title to him, which respondent Lara refused. This action was thereupon begun against Lara and wife and the Seattle Country Club.

The trial court was evidently of the opinion that the contract was rescinded at the meeting which occurred on October 10, 1906, and for that reason dismissed the action. We think the evidence justifies that conclusion. The evidence clearly shows that the appellant was not satisfied with the title which was offered to him, and which respondent declared was out of his power to make better at that time. Whether the title was good, marketable, or merchantable we need not now consider, because the appellant refused it and respondents are not seeking to force him to accept it. The appellant is now seeking to compel respondent Lara to convey a title which on October 10, 1906, he refused to accept. This cannot be done. *Allen v. Treat*, 48 Wash. 552, 94 Pac. 102.

The contract as above quoted provided that, after objections to the title had been pointed out by the appellant, if respondent Lara would not make the same marketable within a reasonable time, then upon demand Lara should repay the $500 and "this contract shall terminate and be at an end." It is true that there is no evidence that appellant demanded the return of the $500, but this was not necessary. The fact that the title was not good and the refusal of Lara to make it good were the facts which permitted appellant to terminate the contract. It may be true, as argued by the appellant, that this provision was for his benefit, but when he rejected the title and thereupon exercised the option to rescind the contract, his right to specifically enforce it also terminated. No express words of rescission by the appellant were necessary. His conduct at that time in refusing the title, and the fact

that he did nothing and said nothing to Lara thereafter for a period of more than six months until the respondent Lara and wife had sold the property to the Seattle Country Club, was sufficient; and the further fact, which appears in the evidence, that the appellant told certain officers of the country club in substance that he did not expect to acquire title to the land by this action but wanted to make trouble for Lara, indicates quite clearly that this action was not brought in good faith. It is probable under the facts shown here that the appellant may recover his money back in an appropriate action therefor, but that is the extent of his rights.

We find no error in the record, and the judgment is therefore affirmed.

ROOT, CROW, and RUDKIN, JJ., concur.

HADLEY, C. J., and FULLERTON, J., took no part.