Argued Nov. 24, decided Dec. 14, 1909, rehearing denied Nov. 29, 1910.
Further rehearing denied Jan. 31, 1911.

## FRIENDLY *v.* ELWERT.

[105 Pac. 404 ; 111 Pac. 690 ; 112 Pac. 1085.]

VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—OPTIONS—"UNI-
LATERAL CONTRACT."

1. A contract for purchase of land acknowledged receipt of $300, and provided that the vendor should furnish an abstract of title and warranty deed conveying a marketable title satisfactory to the purchaser's attorney, the purchaser to have five days in which to examine the title ; and, if not satisfactory, the vendor to refund the payment. *Held,* that the contract was unilateral, the purchaser not binding himself to perform unless the title should prove satisfactory and not contracting to forfeit anything on failure to perform, and was a mere option to purchase which could be converted into a valid contract of sale, binding upon both parties by an unqualified acceptance by the optionee within the time prescribed therein.

VENDOR AND PURCHASER—CONTRACT—ACCEPTANCE.

2. Evidence *held* not to show a *bona fide* acceptance of the option by the optionee.

VENDOR AND PURCHASER—CONTRACTS—FAILURE OF TITLE—REMEDY OF
PURCHASER.

3. Where title to land was not satisfactory to the purchaser, his only remedy was a return of the purchase money, and he could not compel the vendor to clear up the title.

SPECIFIC PERFORMANCE—PERSONS ENTITLED TO ENFORCE PERFORMANCE.

4. Where a person who had contracted to sell land and give a title satisfactory to the purchaser's attorney had lost an unrecorded deed from her grantor to her, and was only able to give a warranty deed which she offered to do but which was refused by the purchaser because of the absence of the unrecorded deed, the purchaser could not subsequently compel her to do the very thing which she had previously offered to do and which he had refused to accept, though she had in the meantime acquired another deed in place of the lost one.

FRAUDS, STATUTE OF—SUFFICIENCY OF WRITING—OPTION TO PURCHASE.
5. An option to purchase, being in writing, was sufficient as against the grantor to take the agreement constituted by its acceptance out of the statute, though the acceptance was not written.

VENDOR AND PURCHASER—OPTIONS—ACCEPTANCE.
6. An option to purchase is not binding until the option has been unqualifiedly accepted.

VENDOR AND PURCHASER—OPTIONS—ACCEPTANCE.
7. There was no unqualified acceptance of an option to purchase by the grantee stating that an abstract submitted was satisfactory, but that it vested title in a third person, and that a deed from the grantor with a deed from such person to the grantor would be satisfactory; nor by the grantee telling the representative of one of the parties that he was ready and willing to complete the transaction, suggesting a meeting for that purpose, and that "it was O. K. with" the deed from the third person.

VENDOR AND PURCHASER—OPTION—NUDUM PACTUM.
8. An option to purchase without consideration is *nudum pactum* until accepted, and, in effect a mere offer.

VENDOR AND PURCHASER—OPTION—CONSIDERATION.
9. An option to purchase is not sustained as to consideration by an advance payment made by the grantee, to be returned on his determination not to accept.

JUDGMENT—ISSUES.
10. There can be no judgment against a party for money which he has tendered in court and concerning which no issue has been joined.

From Multnomah: THOMAS O'DAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

On January 22, 1907, defendant C. M. Elwert entered into an agreement with F. V. Andrews & Co. for the sale of certain property in Portland. The agreement, omitting the description of the property, is as follows:

"January 22, 1907. Received of F. V. Andrews & Co., agents, the sum of three hundred ($300) dollars on account of purchase price of ten thousand ($10,000) dollars, for the following real property, in the city of Portland, Multnomah County, Oregon; * * terms of sale are as follows: I am to furnish complete and satisfactory abstract of title and warranty deed conveying a good and marketable title in fee simple, free of incumbrances, satisfactory to the attorney of the nominee of said F. V. Andrews & Co., said nominee to have five (5) complete days from the time of delivery of abstract of title within which time to examine the title to said property, where-

upon if said title and deed prove satisfactory, said nominee is to pay me the further sum of four thousand seven hundred ($4,700) dollars and give me a mortgage on said property to secure payment of the balance of the purchase price, to-wit: the sum of five thousand ($5,000) dollars, payable one year from date with interest at six per cent, per annum, payable quarter yearly. It is further expressly agreed that I am to pay one-half of the taxes which fall due on or about the 1st day of February, 1907, and that the purchaser is to pay the other half of such taxes in addition to the purchase price of said property. And I further agree to assign to the purchaser of said property, free of further charge, a fire policy for two thousand five hundred ($2,500) dollars, covering the dwelling on said property, which expires in December, 1909, or January, 1910. And I further agree to allow the purchaser to collect the rents accruing after February 6, 1907, and that I will retain the rents collected up to that date. If said title is not satisfactory as aforesaid, I agree to refund the said three hundred ($300) dollars.

"[Signed]   C.   M.   Elwert."

At the time of the execution and delivery of the agreement, the property stood in the name of C. P. Elwert, one of the defendants, but C. M. Elwert, the defendant who appeals, had in her possession and exhibited to F. V. Andrews a warranty deed from C. P. Elwert and wife, fully conveying to her the title to said property in fee simple. Upon the 26th day of January, 1907, C. M. Elwert delivered to Andrews an abstract of title showing that the title to the property stood of record in the name of C. P. Elwert, but, taken in conjunction with the unrecorded deed before mentioned, it appears conclusively that the absolute legal title to the property was in Miss C. M. Elwert. Previous to the 26th of January, Miss Elwert, on the suggestion of Andrews, had taken her abstract and unrecorded deed to Mr. Dabney's office to have it examined by him, and it was agreed that the parties were to meet on the morning of the 28th to close

up the transaction. There is a dispute between Mr. Andrews and Miss Elwert as to the place of meeting; Andrews claiming that it was to have taken place at his office and Miss Elwert claiming that it was to have been at Dabney's office. She claims that she went to the office of Dabney, but that the other parties failed to appear, and that, after waiting some time, she went away. On the forenoon of the 29th day of January she met Mr. Andrews, and told him that she had lost the unrecorded deed, and thought she had left it in Dabney's office. Andrews informed Friendly of this fact, and upon the same day Friendly sent Miss Elwert the following letter:

"January 29, 1907.

"C. M. Elwert, Portland, Oregon.

"Dear madam: Referring to your contract of sale with F. V. Andrews & Co., agents, dated January 22, 1907, I beg to say that I am the purchaser under the said contract of the south 40 feet of lot 4, and 30x100 feet south of and adjoining same in block 262, city of Portland, Multnomah County, Oregon, and hereby make tender to you of the amount due as balance of cash called for under said contract and hold myself in readiness to execute the mortgage for the unpaid balance as provided in said contract. I have had the title examined as shown by the abstract furnished me by you through F. V. Andrews & Co., agents, and find title to be satisfactory, but vested of record in C. P. Elwert. I am informed, however, that you have a good and sufficient deed by which C. P. Elwert conveyed said property to you, so that the warranty deed from you will convey title in fee simple to me. Yours very truly,

"J. C. Friendly."

Dabney testified that Miss Elwert came to his office looking for the deed, but it was never found, although advertised for in a daily paper. Miss Elwert offered to give her warranty deed to the property, but this plaintiff testifies that he was unwilling to accept unless he was given possession of the lost deed, or Miss Elwert should

procure another deed from C. P. Elwert, who had the
record title.   A deed was prepared and sent to C. P.
Elwert, who resided in New York, but he refused to
sign it.

While affairs · were in this unsettled condition, Mr.
McGarry, as attorney for Miss Elwert, wrote to plaintiff
the following letter:

"Portland, Oregon, March 5, 1907.
"F. V. Andrews & Co., Agents, City.

"Gentlemen: On January 23, 1907, I am informed that
C. M. Elwert entered into a contract with you for the
sale of the following described property, viz.: The south
40 feet of lot 4 and 30x100 feet south of and adjoining
same in block 262, city of Portland, being 70x100 feet
on the west side of Eleventh Street between Main and
Jefferson streets in said city.   That the stipulated price
was $10,000, one-half cash and the balance, $5,000, to be
secured by a mortgage upon said property; that she
accepted $300 upon the purchase price of said property
with the understanding that she would give a warranty
deed, a good and marketable title to said property, and
if title was not satisfactory to you to refund the said
$300.   On the date above mentioned, I am informed that
C. M. Elwert held a deed from C. P. Elwert for the prop-
erty, as substantially above described, as agent for C. P.
Elwert to be recorded when she, as such agent, should
make a sale of the property; that on January 29th a
letter was received by C. M. Elwert signed by J. C.
Friendly and endorsed by yourself, tendering to her the
balance of cash due under said contract and notifying
her of said Friendly's readiness to execute a mortgage
for the unpaid balance, and that she was also informed
in this letter by Mr. J. C. Friendly as follows: 'I have
had the title examined as shown by the abstract furnished
me by you through F. V. Andrews & Co., Agents, but
vested of record in C. P. Elwert.   I am informed, how-
ever that you have a good and sufficient deed by which
C. P. Elwert conveyed said property to you, so that the
warranty deed from you will convey title in fee simple
to me.'   I am also informed that C. M. Elwert has lost
the deed referred to from C. P. Elwert to herself, and that

after advertising for the same, is yet unable to recover it. In this misfortune she has asked my advice, owing to the fact that C. P. Elwert seems now unwilling to make a new deed. She is acting upon my advice and now instructs me to notify you that she personally stands ready to execute to you or Mr. Friendly her own warranty deed to the property intended to be conveyed in said contract upon payment to her of the balance contemplated under said contract, and the execution and delivery to her of a mortgage for the unpaid balance of $5,000 by Mr. Friendly or the purchaser thereof. If this proposition be satisfactory, kindly notify me at once and I shall have her execute the papers whenever you are ready to present them. However, if this title should prove unacceptable and the personal warranty of C. M. Elwert be regarded unmarketable, then I will be glad to instruct her to return to you the $300 referred to in the contract, if you will kindly advise me of your preference in the matter.

"Very truly yours,

"Wm. R. McGarry."

This was delivered to the plaintiff and his check for $300 returned to him, but he refused to accept the check and declined to receive the deed.

Nothing further was done in the matter until March 16th, when Dr. Charles E. Wade, residing at Drain, Oregon, agreed to buy the property if Miss Elwert would procure a deed from her brother in New York. This she did, and notified Wade to that effect on the 8th day of April, 1907. On the 17th day of April, he came to Portland and paid her $1,000 to bind the bargain, taking her receipt for the same. On April 30th this suit was filed. On May 17th Dr. Wade came down and closed the deal, paying $6,800 more and giving a mortgage for $2,700. The evidence does not disclose any actual knowledge on the part of Wade of any of the transactions between plaintiff and Miss Elwert until June 26, 1907, when he was served with summons and copy of supple-

mental complaint.   This suit was brought to compel Miss
Elwert to specifically perform her alleged contract and to
clear up the title as to Wade and C. P. Elwert and wife,
and to declare Wade a trustee for plaintiff.   Defendants
C. P. Elwert and wife made default.   C. M. Elwert and
Wade answered, and on the trial a decree was rendered
in favor of plaintiff, from which C. M. Elwert and Wade
appeal.   Other facts necessary to the decision of this
case appear in the opinion.                REVERSED.

For appellant there was a brief with oral arguments
by *Mr. Samuel B. Huston* and *Mr. A. E. Clark.*

For respondent there was a brief over the names of
*Messrs. Murphy, Brodie & Merges* with an oral argu-
ment by *Mr. George A. Brodie.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1, 2. The contract here is unilateral.   The plaintiff
nowhere binds himself to perform unless the title should
prove to be satisfactory, nor did he contract to forfeit
anything in case of failure to perform.   If his attorney
should, even in the most capricious manner and without
assigning any reason therefor, declare the title unsatis-
factory, the defendant C. M. Elwert, after going to the
trouble and expense of having an abstract prepared,
would be compelled to return the $300 paid to her and
be without remedy at law or in equity:   *Church* v. *Shank-
lin,* 95 Cal. 626 (30 Pac. 789: 17 L. R. A. 207) ; *Pollock*
v. *Brookover,* 60 W. Va. 75 (53 S. E. 795: 6 L. R. A.
[N. S.] 403).   It was a mere option to purchase, which
could be converted into a valid contract of sale, binding
upon both parties by an unqualified acceptance by the
optionee, within the time prescribed in the agreement.
We do not think the testimony discloses a *bona fide*
unqualified acceptance.

3. Before an acceptance had been intimated by plain-

tiff in any way that would bind him, he was informed that the unrecorded deed, which formed an important link in the chain of title, had been lost, and we think that the evidence preponderates in favor of the claim of defendant that it was actually lost. Plaintiff's acceptance was conditioned on the presence and availability of this lost deed, and his acceptance of the title as satisfactory was conditioned upon the assumption that C. M. Elwert had it in her possession, after he had been informed that it was not in her possession. The plaintiff testified that he never intended to perform his part of the agreement unless the defendant cleared up the title, either by getting a new deed or by some proceeding in the courts. It is very evident that the title, in the condition that it then was, was not satisfactory to plaintiff, and in such case his remedy was provided in the agreement itself, namely, the return of the purchase money. Am. & Eng. Enc. Law (2 ed.) 87, 88; *Long* v. *Miller*, 46 Minn. 13 (48 N. W. 409) ; *Barker* v. *Critzer*, 35 Kan. 459 (11 Pac. 382).

4. All the relief that the court could possibly have given against C. M. Elwert would have been to compel her to make a deed to the premises, and this she had already tendered before her sale to Wade, and the same was refused by plaintiff. Plaintiff cannot come into court, after refusing the only conveyance defendant could make, and compel her to do the very thing which she had previously offered to do, and which plaintiff had refused to allow her to do : *Johnson* v. *Fuller*, 55 Minn. 269 (56 N. W. 813) ; *Allen* v. *Treat*, 48 Wash. 552 (94 Pac. 102) ; *Weir Investment Co.* v. *Scattergood*, 42 Colo. 54 (94 Pac. 19).

This view of the case renders unnecessary a consideration of the other questions so ably presented by the respective counsel. The decree of the court below will be reversed.                                         REVERSED.

Decided November 29, 1910.

## ON PETITION FOR REHEARING.

[111 Pac. 690.]

Opinion PER CURIAM.

After a careful re-examination of this case, we are satisfied that the conclusion reached in our former opinion (105 Pac. 404) is correct, and we adhere thereto.

REVERSED : REHEARING DENIED.

---

Decided January 31, 1911.

## ON MOTION TO VACATE DECREE.

[112 Pac. 1085.]

Opinion by MR. CHIEF JUSTICE EAKIN.

After the mandate in this case had been issued, plaintiff filed a petition, asking that it be recalled and a rehearing granted, on the ground that the decree should have provided that plaintiff recover the $300 earnest payment made by him at the time the option was signed; and for the further reason that the court must have overlooked certain points urged in the briefs and at the oral argument upon the rehearing. The mandate was recalled, and we have reconsidered the whole case, and we adhere to our first opinion.

The complaint alleges that the option given by C. M. Elwert on January 22, 1907, was accepted by Friendly on January 29th, and "plaintiff herein duly notified the said C. M. Elwert that said title, taken in conjunction with said deed from C. P. Elwert and Alyda Elwert, his wife, to her, was satisfactory to him, and that he accepted the same," etc. This acceptance refers, undoubtedly, to the letter of that date, written by Friendly to C. M. Elwert, which is set out in the statement of the case; and in his testimony he says that he knew when he wrote it that C. M. Elwert claimed to have lost the unrecorded

·deed from C. P. Elwert to her; and that when he wrote
the letter of January 29th he was not willing to go on
with the purchase or accept a deed from C. M. Elwert
without "the missing link in the chain." The abstract
was delivered to him on January 26th, and in the letter
he says it is satisfactory, but that it vests the title in
C. P. Elwert, and that he is informed she has a convey-
ance to herself from C. P. Elwert, so that with it a war-
ranty deed from her will be satisfactory, thus qualifying
his acceptance, and no agreement is reached between
plaintiff and defendant.

Plaintiff urges that there was an unconditional oral
acceptance of the option. The only proof of this does
not relate to the time mentioned in the complaint, but is
given by Mr. Andrews in his testimony, viz.:

"On the 21st (he undoubtedly meant the 28th of Jan-
uary) he (Friendly) telephoned to me he was ready and
willing to complete the transaction, as everything was in
order, and suggested we should meet at Mr. Dabney's
office on the following afternoon at half past two to com-
plete the transaction. I went up that evening to see Miss
Elwert and notified her about the matter. I missed her
at home, but met her on Yamhill Street between Seventh
and Park and told her about it."

It can hardly be contended that this constituted a
formal acceptance by Friendly. He sent no communica-
tion to C. M. Elwert, nor did Andrews state to her that
either Friendly or he accepted the option. He only
appointed a time and place to meet and complete the
transaction. Friendly testified that he "told Andrews
that it was O. K. with this deed from Elwert and his
wife to C. M. Elwert." No intimation is given that he
accepted or authorized Andrews to accept the option.
From all that was said he assumed no liability or obliga-
tion to C. M. Elwert to purchase. The title was not yet
satisfactory. He at all times, even by the letter of the
29th, left himself free to refuse the title. In cross-exam-
ination he was asked:

"So when you wrote that letter you meant, of course, that she would have to complete the title and put it in good shape?

"A. I didn't care how she did it, as long as she got the title to the property clear and free. There are several ways of doing it, had she shown the right spirit about the matter.

"Q. But you did not mean to take it with the deed lost unless she cleared the title some way?

"A. Unless she celared the title up through the courts some way."

5, 6. Although the option being in writing was sufficient, as against C. M. Elwert, to take the case out of the statute of fraods, even though Friendly's acceptance was not in writing, yet she was not bound to specifically perform, or to respond in damages, until there was an unqualified acceptance by Friendly.

7. If what palintiff contends was an oral acceptance had been in writing, neither it nor the letter of January 29th would have been such an acceptance as would give C. M. Elwert a remedy for specific performance against Friendly; and, if not, there was no agreement. In *Davis* v. *Brigham*, 56 Or. 41 (107 Pac. 961), it is held that to make the option obligatory it is necessary that the other party shall have accepted the terms of the option. The option gave to Andrews a choice of two remedies.

"If said title and deed prove satisfactory, said nominee is to pay me the further sum of * *. If said title is not satisfactory as aforesaid, I agree to refund the said three hundred (300) dollars."

8. An option to purchase given by an owner of real estate if without consideration is *nudum pactum* until accepted, and is, in effect, only an offer. And that is true of the option in this case. It was without consideration; the $300 was not a consideration for the option, but an advance payment on the purchase price of the property, in case Friendly accepted it: *Rude* v. *Levy*, 43 Colo. 482

Sig. 20

(96 Pac. 560: 127 Am. St. Rep. 123: 24 L. R. A. [N. S.] 91) ; *Berry* v. *Frisbie,* 120 Ky. 337 (86 S. W. 558), and note to *Litz* v. *Goosling,* 21 L. R. A. 127.

9. The case of *Weir Inv. Co.* v. *Scatterwood,* 42 Colo. 54 (94 Pac. 19), is very much in point here. The option provided that in the event the title was not approved by the attorney for the defendant then the amount paid should be returned. Plaintiff failed to furnish an abstract of title which defendant's attorney would approve, and defendant refused to accept the title offered. The court, adopting the language of the opinion in *Johnson* v. *Fuller,* 55 Minn. 269 (56 N. W. 813), held that "his claim is, in effect, that he could refuse to accept a conveyance, and at any time afterwards compel the vendor to make one. The contract certainly did not contemplate any such thing. What is clearly included was that if, at the end of 30 days, the title should be unmarketable, the vendee might do either of two things: First, perform the contract and take a conveyance, relying on the covenants in it as a security against any defects in the title; or, second refuse to perform and receive back the money paid on it—in effect to rescind the contract." See, also, *Long* v. *Miller,* 46 Minn. 13 (48 N. W. 409).

In *Marsh* v. *Lott,* 156 Cal. 643 (105 Pac. 968), it is said:

"Until plaintiff accepted the offer, there could be no mutuality; in fact, no contract whereby plaintiff was obligated in any way. He could signify his acceptance in accordance with the terms of the contract and subject to all, not part, of the conditions imposed thereby."

In *Henry* v. *Black,* 213 Pa. 620, 627 (63 Atl. 250, 253), the court says:

"An acceptance of an option to be good must be such as amounts to an agreement or contract between the parties. Such an acceptance can be only an unconditional one. The rule upon this subject is thus stated in *Potts*

v. *Whitehead*, 23 N. J. Eq. 512: 'An acceptance, to be good, must, of course, be such as to conclude an agreement or contract between the parties. And to do this it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand.' "

And in *Berry* v. *Frisbie*, 120 Ky. 337 (86 S. W. 558), it is said:

"Where it is left to one of the parties to an agreement to choose whether he will proceed or abandon it, neither can specifically enforce its execution in equity."

This question is well annotated in *Litz* v. *Goosling*, 93 Ky. 185 (19 S. W. 527: 21 L. R. A. 127). To the same effect are *Cummins* v. *Beavers*, 103 Va. 230 (48 S. E. 891: 106 Am. St. Rep. 881), with a note in 1 Am. & Eng. Ann. Cas. 986; and *Mier* v. *Hadden*, 148 Mich. 488 (111 N. W. 1040: 118 Am. St. Rep. 586), with an extended note in 12 Am. & Eng. Ann. Cas. 88, 91.

10. Plaintiff also insists that we should render judgment against defendant for the $300 advanced upon the option. There is no doubt that the money should be returned to him, but there is no issue tendered in regard to it by either party. The money has been tendered to plaintiff and refused, and this court is not authorized to render a judgment against defendant for money which she offered to pay. Plaintiff has stipulated that "we always claimed they were willing to pay us our $300 back."

The motion to vacate the decree rendered by this court is denied.        REVERSED: REHEARING DENIED.