Argued October 2, reversed and remanded October 21, rehearing denied November 12, second petition for rehearing denied November 25, 1924.

# Re Estate of SARAH A. DENNING, Deceased.

# C. O. DENNING v. CHARLES E. BAILEY, Adm.

(229 Pac. 912.)

**Wills—Take Effect on Death of Testator.**

1. A will takes effect on death of testator.

**Wills—Beneficiaries Take Property as It is at Time of Testator's Death.**

2. The beneficiaries of a will take property in condition it is in at death of testator.

**Conversion — Nature of Property at Testator's Death cannot be Changed During Administration of Estate.**

3. If testator's interest in land or its proceeds was personal property at his death, it remains so during administration of estate, and administrator cannot change its nature.

**Equity—Does not Favor Forfeiture.**

4. Equity does not favor forfeiture.

**Vendor and Purchaser—Vendor Accepting Payments After Default cannot Declare Forfeiture Without Notice to Purchaser.**

5. Even when time is made essence of contract, and purchaser is in default, if vendor accepts payment or waives prompt performances by purchaser, he cannot thereafter declare a forfeiture without notice thereof to purchaser.

**Vendor and Purchaser—No Forfeiture Occurs Until Forfeiture Declared.**

6. Under contract for sale of land providing for forfeiture of vendee's interest on default, no forfeiture occurred though vendee was in arrears, where no forfeiture had been declared, as provision for forfeiture was for vendor's benefit, and could be waived by her.

**Specific Performance—Either Party to Contract for Sale of Land may have Specific Performance.**

7. Either party to contract for sale of land may have specific performance of that contract.

3. Doctrine of equitable conversion, see note in 5 **Am. St. Rep.** 141.

6. See 27 **R. C. L.** 644.

7. See 27 **R. C. L.** 467, 613

Conversion — Interest of Testatrix in Land Which She had Con-
    tracted to Sell Considered as Personal Property for Purpose of
    Distribution.

8. Where testatrix contracted to sell land, placing purchaser in
possession, her interest was thereby converted into personal property
and remained so at her death, and sale of land under foreclosure by
administrator did not constitute a reconversion; such land being
treated as personal property for purpose of distribution.

Wills—Rule That Subsequent Disposal of Land Specifically Devised
    Does not Revoke Such Devise Held not Applicable.

9. Where testatrix made will of personal property only, and later
entered into a contract for sale of land, Section 10099, Or. L., pro-
viding that a specific devise of real property is not revoked by tes-
tator's subsequent disposal of such property, did not prevent interest
under contract passing as personalty; there not having been a
specific devise.

---

See 13 C. J., pp. 855, 882, 888; 21 C. J., p. 100; 23 C. J., p. 1139;
36 Cyc., p. 552; 39 Cyc., pp. 1606, 1608, 1611; 40 Cyc., pp. 1074, 1368,
1424, 1207 (1926 Anno.).

From Lane: G. F. SKIPWORTH, Judge.

Department 2.

The problem presented for solution by this appeal
may be succinctly defined in this question: Is the
interest of the estate in the contract for the sale of
land real or personal?

The appeal comes here from a decree of the Circuit
Court reversing a decree and order of the County
Court rendered and entered on the final report of
Charles E. Bailey, as administrator, with the will
annexed, of Sarah E. Denning, deceased. The dece-
dent died on December 18, 1914, leaving her last will
and testament disposing of all her personal property
but making no mention at all of her real property
situate in the State of Oregon. On March 16, 1908,
the decedent was the owner of 320 acres of land in
Lane County, Oregon. On that date she executed the
will and also executed two deeds conveying said

---

8. Doctrine of equitable conversion as applicable where vendor
dies before carrying out contract for sale of realty, see note in
Ann. Cas. 1914D, 419. See, also, 9 R. C. L. 82.

real property to her daughters Mary Alice Bailey and Martha J. Bailey. By her will she bequeathed $25 to her grandson, Clyde O. Denning, the respondent in this appeal, and all the remainder of her personal property to her two daughters aforesaid. She also devised some real property in the State of Nebraska to her grandchildren. Thereafter, on May 29, 1911, the said decedent entered into a written contract for the sale of the real property situate in Lane County and involved in this appeal. That contract provided for the purchase by William Porter of the real property and of the sale thereof to him by the said decedent. It provided for the payment of the taxes by the vendee and the proper care and repair of all of the improvements including the fences, for insurance of the building, and provided that the vendor would, upon the payment of the purchase price as agreed upon, cause to be executed and delivered to the vendee a good and sufficient deed in fee simple to the premises therein described free from all legal encumbrances except the taxes therein agreed to be paid by the vendee. Then follows this agreement:

"And it is agreed that if the party of the second part (the vendee) shall fail to make any of said payments at the time and in the manner above specified, this agreement shall henceforth be entirely void, and all payments thereon forfeited, said second party to have possession of said premises from Oct. 1st, 1911, free of charge so long as he complies with the terms of this agreement."

A deed was duly executed contemporaneously with the contract and delivered to a bank as an escrow to be delivered to the vendee when payment should have been completed.

The purchase price was $16,000; $500 of which was paid at the ensealing and delivery of the contract;

$1,500 was to be paid on or before October 1, 1911; $4,000, October 1, 1912, and $10,000 on or before October 1, 1917, with interest on deferred payments after October 1, 1911, at 6 per cent per annum. The second installment of $1,500 was paid on or about the time the same became due and enough additional to make a total of $4,000 paid on the principal; and the interest was to be paid on October 1, 1916. At least one payment of interest amounting to $720 was paid after death of the decedent.

On May 24, 1918, the said Charles E. Bailey, as administrator, began a suit to foreclose the interest of the vendee in and to the land, in which suit the contract was treated as a mortgage. The suit was prosecuted to a decree, execution issued and the land sold at public auction by the sheriff and bought by the administrator, the said Charles E. Bailey. The sale was reported and confirmed, and after due time a deed was duly executed and delivered to the said purchaser. The administrator, in settling the estate of the decedent, treated the land as personal property, and sought to distribute it according to the will to the two daughters of the decedent, the said Mary Alice Bailey and Martha J. Bailey. The administrator and the two daughters contend that the land became personal property under the doctrine of equitable conversion by the contract of sale executed by the vendor, and that the repurchase of the land under the decree of foreclosure on execution did not reconvert it into real property for the purposes of descent and distribution. The respondent, C. O. Denning, contends that the land remained real property; that the doctrine of equitable conversion is not applicable, and that the land, not having been disposed of by will, descends to the lawful heirs of the decedent,

to wit: The said Mary Alice Bailey and Martha J. Bailey and C. O. Denning, who is a son of a deceased son of the decedent. There is no controversy about the lawful heirs.

The respondent, C. O. Denning, also contends that the written contract for the sale of the land is such as equity would not specifically enforce against an unwilling vendee, and for that reason the doctrine of equitable conversion does not apply, and the land was realty at the death of the testatrix and is realty now.

The title to the land involved was registered, and the contract for the sale of the land by the testatrix was duly noted on the certificate of title.

REVERSED AND REMANDED.     REHEARING DENIED.

For appellant there was a brief and oral arguments by *Mr. Whitten Swafford* and *Mr. H. E. Slattery.*

For respondent there was a brief over the name of *Messrs. Potter, Foster & Immel,* with oral arguments by *Mr. E. O. Immel* and *Mr. O. H. Foster.*

COSHOW, J.—1-3. A will takes effect on the death of the testator. The beneficiaries of the will take the property under the condition it is in at the death of the testator. If the land involved in this appeal, or its proceeds was personal property at the death of the testatrix, then it remained so through the administration of her estate. Nothing that the administrator with the will annexed could do in the course of administration could change the nature of that property: 28 R. C. L. 60, § 4, note 4; *In re Estate of Bernhard, Deceased,* 134 Iowa, 603 (112 N. W. 86, 12 L. R. A. (N. S.) 1029); 40 Cyc. 1074, 1368; *Keep* v. *Miller,* 41 N. J. Eq. 350 (6 Atl. 495);

112 Or.—40

*Leiper's Appeal,* 35 Pa. St. 420 (78 Am. Dec. 347);
*In re Wilson's Estate,* 85 Or. 604, 620 (167 Pac. 580);
Rood on Wills, § 429; Page on Wills, § 49.

"Equitable conversion is defined as a constructive alteration in the nature of property by which in equity real estate is regarded as personalty or personal estate as realty. It grows out of the old equitable maxim that 'Equity regards that done which ought to be done.' 2 Story's Equity Jurisprudence (14 ed.), § 1091.

"There is another consideration which is incident to this subject and to which Courts of Equity have given an attention and effect proportioned to its importance. In the view of Courts of Law contracts respecting lands, or other things, of which a specific execution will be decreed in equity, are considered as simple executory agreements, and as not attaching to the property in any manner, as an incident, or as a present or future charge. But Courts of Equity regard them in a very different light. They treat them, for most purposes, precisely as if they had been specifically executed. Thus if a man has entered into a valid contract for the purchase of land, he is treated in equity as the equitable owner of the land, and the vendor is treated as the owner of the money. The purchaser may devise it as land, even before the conveyance is made, and it passes by descent to his heir as land. The vendor is deemed in equity to stand seised of it for the benefit of the purchaser, and the trust (as has been already stated) attaches to the land so as to bind the heir of the vendor, and every one claiming under him as a purchaser with notice of the trust. The heir of the purchaser may come into equity and insist upon a specific performance of the contract; and unless some other circumstances affect the case, he may require the purchase-money to be paid out of the personal estate of the purchaser in the hands of his personal representative. On the other hand the vendor may come into equity for a specific performance of the contract on the other side, and to have the money paid; for the remedy, in

cases of specific performance, is mutual, and the purchase-money is treated as the personal estate of the vendor, and goes as such to his personal representatives.'' 2 Story's Equity Jurisprudence (14 ed.), § 1092.

See, also, 1 Pomeroy's Equity Jurisprudence (4 ed.), §§ 371, 372; *In re Dwyer's Estate,* 159 Cal. 664 (115 Pac. 235); 13 C. J. 855, § 8 et seq.; 6 R. C. L. 1076, 1077; *Rhodes* v. *Meredith,* 260 Ill. 138 (102 N. E. 1063, 34 Ann. Cas. 1914D, 416).

In *Stewart* v. *Mann,* 85 Or. 68, 74 (165 Pac. 590, 1169), the court announces the same doctrine in the following language:

''The doctrine of the cases is to the effect that a vendee acquires an estate in land under an executory contract for the purchase of the same in proportion as he pays the purchase price and is not in default in the performance of his covenant. The vendor holds the legal title to that extent in trust for the vendee.''

4–6. The respondent, C. O. Denning, ably and earnestly argues that, inasmuch as the vendee was in default at the time of the death of the testatrix, the doctrine of equitable conversion does not apply. It will be noticed that the contract for the sale did not make time of the essence thereof. The record further discloses that the testatrix extended the time of payment to the purchaser. She also accepted a payment after the purchaser's default. After her death, her administrator with the will annexed also accepted payment. The purchaser remained in possession exercising ownership of the property. Equity does not favor forfeiture: *Mitchell* v. *Hughes,* 80 Or. 574 (157 Pac. 965); *Miller* v. *Beck,* 72 Or. 140 (142 Pac. 603); *Hawkins* v. *Rogers,* 91 Or. 483 (179 Pac. 563, 905); *Cornely* v. *Campbell,* 95 Or. 345 (186 Pac. 563, 187 Pac. 1103). The provision of forfeiture in the con-

tract was for the benefit of the vendor. She could waive that provision. She did not declare a forfeiture during her lifetime and for that reason forfeiture had not occurred, notwithstanding the purchaser was in arrears. Even when time is made the essence of the contract and the purchaser is in default, if the vendor accepts payment, or by any other act waives the prompt performance on the part of the purchaser, he cannot thereafter declare a forfeiture without notice to the purchaser of his intention to do so: *Johnson* v. *Berns,* 111 Or. 165 (225 Pac. 727, 224 Pac. 624), and other cases cited above. In fact, the purchaser was not in default at the time of the death of the vendor for she had extended time to the purchaser.

7. The respondent, C. O. Denning, asserts that the contract would not be specifically enforced against the purchaser. No reason is given for that assertion. The contract is mutual, the purchaser agreeing to buy and the vendor agreeing to sell the specific property for a specified amount. Either party to a contract for the sale of land may have specific performance of that contract: *Slatterly* v. *Gross,* 96 Or. 554 (187 Pac. 300, 190 Pac. 577); 2 Story's Equity Jurisprudence (14 ed.), § 1092; 4 Pomeroy's Equity Jurisprudence (4 ed.), § 1402; 5 Pomeroy's Equitable Remedies (2 ed.), § 745.

8. When the testatrix entered into the contract for the sale of land and placed the purchaser in possession, she then became the trustee of the title for the benefit of the purchaser, and the purchaser became the trustee of the purchase price for the benefit of the testatrix. The interest of the testatrix was thereby converted into personal property. That was the status of the land at the death of the testatrix. That land would remain personal property until by the

voluntary act of the owner thereof the same should be reconverted into realty. The sale of the land under foreclosure at the suit of the administrator with the will annexed did not constitute reconversion. The land should be treated, therefore, as personal property for the purpose of distribution under the law.

9. It is earnestly contended by the respondent that Section 10099, Or. L., prevents the doctrine of equitable conversion from applying. We think not. By the common-law doctrine a specific devise of real property was revoked if the property was disposed of during the life of the testator. Section 10099 changes that rule by preventing a revocation of such a devise. That rule has no application to this particular case because the property in dispute here was not specifically devised.

Section 10099, Or. L., referred to is as follows:

"A bond, covenant or agreement made for a valuable consideration by a testator, to convey any property devised or bequeathed in any last will previously made, shall not be deemed a revocation of such previous devise or bequest, either in law or equity; but such property shall pass by the devise or bequest subject to the same remedies on such bond, covenant, or agreement, for the specific performance or otherwise, against devisees or legatees as might be had by law against the heirs of the testator or his next of kin, if the same had descended to them."

Under the common law, the devise of the land in dispute, if one had been made by her will, would have been deemed revoked by the contract for the sale of that land. By the terms of the statute the devisee would take the interest of the testatrix in the land so devised, or the unpaid purchase price, instead of the land itself. In other words, the devisee would be

placed in the same situation with reference to the land as the testator himself was.

The case of *Potter Realty Co.* v. *Derby,* 75 Or. 563 (147 Pac. 548), relied upon by the respondent, C. O. Denning, does not support his contention. In that case the contract provided the remedy in case of default. The court held that the parties were bound by the terms of the contract. In the contract involved in the instant case there is no remedy provided in case of a breach. The parties are left to the remedies provided by law.

The respondent, C. O. Denning, invokes the rule of construction that—

"If one construction would give the property * * unequally between the children, and another would dispose of it as it would go by the statute of descent or distribution, it is but natural to suppose that the later is the true construction." Rood on Wills, § 430.

But the controversy here does not involve the construction of the will. All agree upon the import of the will. The sole matter for determination is the nature of the property of the decedent in the land at the time of her death. If it is personal property, then all concede it should be distributed as directed by the County Court. If it is real property, all concede that it descended to the heirs as decreed by the Circuit Court.

The two deeds, executed by the testatrix at the same time she executed her will, were admitted without objection for the purpose of disclosing the intention of the testatrix to give the land to the two daughters. It must be conceded that the two deeds indicate that intention. The will devises the real property in the State of Nebraska to the grandchildren, one of whom is the respondent, C. O. Den-

ning. The will does not mention the real property in Oregon. The presumption is very strong that the real property in Oregon was omitted from the will because the testatrix had conveyed it to her two daughters on that very day. We are not permitted to inquire into the motives or reasons of the testatrix. This appeal hinges on the status or nature of the property of the testatrix in the land at the time of her death. We believe her interest was personal property under the doctrine of equitable conversion: *Collins* v. *Creason,* 55 Or. 524 (106 Pac. 445); *Miles* v. *Hemenway,* 59 Or. 318 (111 Pac. 696, 117 Pac. 273); Sections 1266–1268, Or. L.

The case of *Wollenberg* v. *Rose,* 45 Or. 615 (78 Pac. 751), relied on by respondent does not support his contention. In that case there was no written contract and the title to the land was in controversy. There was no will. The land descended to the heirs immediately on the death of the owner. In the instant case the title to the land would have passed to the purchaser by delivery to him of the deed in escrow: *Flanagan Estate* v. *Great Central Land Co.,* 45 Or. 335 (77 Pac. 485). Section 1269, Or. L., provides for a conveyance by the administrator under circumstances similar to those involved.

It follows, therefore, that the decree of the Circuit Court must be reversed and the decree of the County Court affirmed. A decree will be entered here accordingly, and the cause remanded to the Circuit Court with instructions to remand it to the County Court for distribution of the property agreeably to said decree of this court.

REVERSED AND REMANDED. REHEARING DENIED.
SECOND PETITION FOR REHEARING DENIED.

BURNETT, BEAN and BROWN, JJ., concur.