Submitted on briefs September 8, affirmed October 13, rehearing denied December 8, 1925.

# ROBERT C. KINNEY v. BIRDIE F. SCHLUSSEL ET AL.

## (239 Pac. 818.)

**Contracts—Writings, Showing on Face They Related to Same Transaction, must be Taken and Read Together, and so Construed, to Give Effect to Intention of Parties.**

1. Writings, which showed on face they related to same transaction, must be taken and read together, and so construed, to give effect to intention of parties.

**Contracts — While Delivery Ordinarily not Required to Complete Contract, Parties may Agree That Writing is not to be Delivered as Contract Until Certain Event Takes Place.**

2. While, ordinarily, delivery is not required to completion of a written contract, parties may themselves agree a writing is not to be delivered as a contract, until the happening of a certain event, and, if such event does not happen, there shall be no delivery of it.

**Contracts — Office of Judge in Construing Instrument Simply to Ascertain Its Terms or Substance and not to Insert New Matter.**

3. Under Section 715, Or. L., the office of a judge in construing an instrument is simply to ascertain and declare what is in terms or substance contained therein, and not to insert what has been omitted or *vice versa*, and instrument should be construed, if possible, so as to give effect to whole.

**Contracts—Instrument must be Construed by Taking It at Four Corners and Construction Given Which will Give Effect to Intention of Parties if Possible.**

4. An instrument should be construed by taking it at the four corners and construction given, which, if possible, will give effect to all its parts and carry out obvious intention of parties, and which will make contract legal rather than render it void.

**Vendor and Purchaser—If Title Defective, Plaintiff had Election to Perform Contract and Rely on Covenants in Deed or Refuse to Perform Contract and Receive Back Money Deposited Thereon.**

5. Where contract provided for delivery of marketable title, if title was unsatisfactory, purchaser could either perform contract and rely on covenants in deed as securities against defects, or he could refuse to perform contract and receive back money deposited thereon.

---

1. Construction of interdependent instruments, see note in 5 Ann. Cas. 149. See, also, 6 R. C. L. 850.

4. See 6 R. C. L. 837.

Specific Performance—Purchaser Refusing to Take Title Because of Defect cannot Compel Specific Performance for Conveyance of Same Title He Refused.

6. After plaintiff refused to take title, because of defect therein, he could not later come into court of equity and ask court to compel same conveyance, which vendor offered and which was refused.

Vendor and Purchaser — Purchaser's Right to Elect to Accept Defective Title and Rely on Warranties, or Refuse to Carry on Contract, Equitable Right and not Legal One.

7. Purchaser's right to elect to accept defective title from vendor and rely on warranties contained in deed, or reject same, is an equitable right and not a legal one.

Specific Performance — Purchaser Terminated Contract of Sale Because of Defective Title, Where He Refused to Accept Title and Withdrew Deposit from Bank.

8. Where purchaser refused to accept title because of defect, withdrew money deposited in bank pending negotiations, and failed to notify bank of his acceptance of title, which was required before there was to be a delivery of contract under the terms of the agreement, *held* he had terminated contract, and could not later demand specific performance thereof from vendor.

Vendor and Purchaser — Writings Construed to Show No Contract was to be Existent Until Copy Delivered by Bank to Purchaser, After Purchasers' Approval of Title and Notification Thereof to Bank.

9. Writings construed, and *held* to show intention of parties not to enter into contract for sale of land effective immediately, but that contract should be effective only after purchaser's acceptance of title, notice thereof to bank, and payment to vendor by bank of purchaser's deposit.

Vendor and Purchaser—Fact Vendor Referred to Writing as Contract not Controlling as to Whether Contract was Immediately Effective or not.

10. The fact that vendor, in letter to bank, referred to writing as a contract, was not controlling as to whether or not writing referred to was a contract, which was to go into effect immediately or not.

Escrows—Time When Instrument Takes Effect Controlled by Intention of Parties to Escrow Agreement, but Intention must be Ascertained from Language Used in Contract.

11. Time, when instrument takes effect controlled by intention of parties to escrow agreement, but intention must be ascertained from language used in contract.

---

6. Right of vendee to specific performance with abatement from purchase price, where vendor is unable to convey a good and unencumbered title, see notes in 24 L. R. A. 763, 765; 10 L. R. A. (N. S.) 117; 38 L. R. A. (N. S.) 1195; L. R. A. 1917F, 597.

Right of vendee in contract for sale of real property to recover payments, see note in L. R. A. 1918B, 540.

Specific Performance—Vendor not Entitled to Recover for Expenditures Made Off of Premises Preparatory to Possession of Property.

12. Where contract provided that, on full payment of purchase price of land, plaintiff was authorized to go on premises and construct a road, *held*, where plaintiff had not approved title or paid purchase price, and contract had not consequently gone into effect, plaintiff could not recover for any expenses made off premises in preparing to construct such road; plaintiff knowing full terms of contract.

Vendor and Purchaser—Plaintiff Seeking Specific Performance Required to Prove Agreement by Vendor to Cure Defective Title and Hold Papers in Escrow.

13. Where plaintiff, seeking to compel specific performance of land, pleaded that, when notified of defect in title, vendor agreed to cure same and hold papers in escrow until cured, but defendant denied such agreement, the burden was on plaintiff to prove same.

Vendor and Purchaser—Where no Provision in Contract Obligating Vendor to Cure Defective Title, There was no Consideration for Subsequent Agreement to Cure Title or Hold Papers in Escrow.

14. Where there was no provision in contract obligating vendor to cure defect in title, there was no consideration for an alleged subsequent agreement by vendor to cure title or hold papers relating to sale in escrow until defects were cured.

See (1) 13 C. J. 521, 528.    (2) 13 C. J. 307.    (3) 13 C. J. 525, 535. (4) 13 C. J. 539.    (5) 39 Cyc. 1522.    (6) 36 Cyc. 720.    (7) 39 Cyc. 1523.    (8) 36 Cyc. 720.    (9) 39 Cyc. 1326.    (10) 21 C. J. 872; 39 Cyc. 1297.    (11) 21 C. J. 870, 889.    (12) 36 Cyc. 750.    (13) 39 Cyc. 1350.    (14) 39 Cyc. 1352.

From Multnomah: J. U. CAMPBELL, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the name of *Mr. Chriss A. Bell.*

For respondents there was a brief over the name of *Messrs. Veazie & Veazie.*

RAND, J.—This was a suit in equity to compel the specific performance of an alleged contract for the sale of land. The complaint alleges that defendants entered into a contract with plaintiff whereby defend-

ants agreed to sell and convey in fee simple and he agreed to purchase certain real property in Clatsop County, Oregon. This allegation was denied by the answer. Two writings are attached as exhibits to the complaint, which the complaint alleges and the answer admits were signed by plaintiff and defendants on April 23, 1923. Omitting the attestation clause, these papers, the signatures to the first of which are sealed, read as follows:

"Know All Men By These Presents, that Birdie F. Schlussel and Sadie R. Schlussel, hereinafter referred to as Schlussels, agree upon the terms hereinafter set out to sell to Robert C. Kinney, hereinafter referred to as Kinney, the following described land, to-wit:

"The Southwest quarter of the Southeast quarter and the Southeast quarter of the Southwest quarter and the Southwest quarter of the Southwest quarter of Section 17, Township 6 North, Range 9 West of the Willamette Meridian, and the Southeast quarter of the Southeast quarter of Section 18, Township 6 North, Range 9 West, Clatsop County, Ore.

"The said Kinney agrees to purchase and pay for said land the sum of fifty-five hundred and no/100 ($5500.00) dollars on the following terms, to-wit:

"Fifteen hundred ($1500.00) dollars upon his approval of title and the execution and delivery of this contract and the balance of four thousand ($4000.00) dollars on or before two years after date with payments of not less than two thousand ($2,000.00) dollars per year with interest on all unpaid balances at the rate of 7% per annum, payable semi-annually.

"The said Schlussels agree that upon the delivery of this contract, the said Kinney may go upon the premises described for the purpose of constructing and laying out his logging road for the purpose of removing the timber on said premises prior to the delivery of the deed according to the terms hereinafter set out, then the entire balance due on said pur-

chase price will become immediately due and payable.

"The said Schlussels agree to pay taxes for the year 1922, and the said Kinney agrees to pay all taxes thereafter.

"The said Schlussels agree to furnish, at their own expense, an abstract of title to date, showing title free and clear of all incumbrances in the said Schlussels, the said Kinney to have five days after receipt of abstract for the purpose of examining the same.

"It is hereby mutually agreed that this contract shall be deposited in Ladd & Tilton Bank together with fifteen hundred ($1500.00) dollars by the said Kinney, and when he shall approve title as hereinbefore set out, the fifteen hundred ($1500.00) dollars shall be by said Bank paid to the said Schlussels and the contract delivered to the said Kinney.

"The said Schlussels agree to deposit in Ladd & Tilton Bank a general warranty deed to said premises with instructions to deliver the same to the said Kinney upon full payment of the balance due under this contract. * * "

"Portland, Oregon, April 23, 1923.
"Ladd & Tilton Bank,
    "Portland, Oregon.
"Gentlemen:

"There is deposited herewith three copies of a contract between Birdie F. Schlussel and Sadie R. Schlussel on the one part and Robert C. Kinney upon the other, together with the sum of fifteen hundred ($1500.00) dollars.

"When Mr. Kinney shall signify to you that he has approved title to these premises, kindly deliver one copy of the contract to him and hold the other copy subject to our order and credit the $1500.00 to our account.

"There is also delivered herewith a warranty deed covering said premises signed by Birdie F. Schlussel and Sadie R. Schlussel, which you are instructed to deliver to Mr. Kinney upon his paying the balance of

four thousand ($4,000.00) dollars according to the terms of the contract, and you are further authorized to affix and cancel the necessary United States Revenue Stamps upon said deed prior to delivery, reimbursing yourself for the cost of said stamps out of moneys in your care and to our credit.

"In the event that Mr. Kinney shall fail to signify to you within thirty (30) days from the date of this letter, that he has approved title to these premises, upon the demand of Sadie R. Schlussel and Birdie F. Schlussel, you are to deliver back to them, or either of them, said contracts and the deed deposited with you with this letter."

1. The first of these writings is in the form of a contract,—the second contains instructions which were given to the bank directing the disposal to be made of the first paper. Whether the first writing was, in fact, a concluded contract and went into immediate effect, depends upon the intention of the parties, as the fact itself is put in issue by the pleadings. On their face these two writings show that they relate to the same transaction and therefore they must be taken and read together and be so construed that each may have the effect intended by the parties.

2. While it is ordinarily true that the manual traduction of a written contract is not required, yet the parties may themselves agree that a writing, which if completely executed would be a valid and enforceable contract, shall not be delivered as a contract until the happening of a certain event, or that if such event does not happen there shall be no delivery of it. If there was such an agreement in this case, then there could be no contract until delivery, for no other intention could reasonably be imputed to the parties. There is no evidence of the intention of the parties to be found in this record except that contained in

the writings themselves, and so we must look to them alone to determine the intention of the parties.

3, 4. In construing these two instruments for the purpose of determining the intention of the parties and treating them as one instrument, there are certain well-defined rules of construction which must be followed. Section 715, Or. L., declares that the office of the judge in construing an instrument is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all. And, as said by Mr. Justice WOLVERTON in *Arment* v. *Yamhill County*, 28 Or. 474 (43 Pac. 653), an instrument must "be construed by taking it at the four corners and looking through the whole instrument from the identical standpoint of the contracting parties when it was entered into, and that construction must be given it, if possible, which will give effect to all its parts and carry out the obvious intention of the parties, and which will make the contract legal rather than one that will render it void."

An examination of these two instruments discloses that by the provisions of the first, second and fifth paragraphs of the first writing the defendants agreed to sell and the plaintiff to purchase the premises in controversy for $5,500, of which $1,500 was to be paid upon the delivery of the contract and balance later at stated intervals, and that the defendants agreed to furnish an abstract of title and that the abstract so furnished should show a good title. If there had been nothing else contained in the contract except the provisions just referred to, and if it was executed by the parties with intent that it should go into im-

mediate effect as a contract, it would, of course, be
a concluded contract and either party, upon his per-
formance, would be entitled to require the other
party to perform.

Now, before referring to any other provisions of
the contract let us assume that the contract contained
only the terms just referred to and that the contract
was executed by both parties and that they intended
it to go into immediate effect, and that upon the per-
formance by one or offer to perform, he would be
entitled to compel the other to perform, and apply
this legal result to the facts appearing in this case.

5. The first payment of $1,500 together with the
three copies of the first writing were deposited and
placed in the bank in accordance with the terms of
the understanding between the parties. Defendants
furnished an abstract and this abstract failed to show
that defendants had a good and merchantable title in
the premises, and for that reason the plaintiff did not
approve the title and did not notify the bank of his
approval, and it further appears that defendants can-
not cure the alleged defect in the title. Let us fur-
ther assume that defendants' failure to furnish the
abstract was a breach of the contract upon their part.
Now, under these circumstances, what was plaintiff's
remedy so far as his right to sue to compel specific
performance is concerned? That question is answered
in the only way it can possibly be answered by the
former decisions of this and other courts. If the
title was unsatisfactory to plaintiff he had an election
to do either of two things. He could either perform
the contract and take a conveyance relying on the
covenants in the deed as security against any defects
in the title, or he could refuse to perform the contract
and receive from the bank the money he had placed

there: *Friendly* v. *Elwert*, 57 Or. 599, 610 (105 Pac. 44, 111 Pac. 690, 112 Pac. 1085, Ann. Cas. 1913A, 357), and authorities there cited. See, also, *Johnson* v. *Fuller*, 55 Minn. 269 (56 N. W. 813); *Weir Inv. Co.* v. *Scattergood*, 42 Colo. 54 (94 Pac. 19).

6. This is a suit to specifically enforce this particular contract. The principle that a party is entitled to recover damages for a breach of contract is therefore not involved. When confronted with the condition stated, plaintiff refused to approve the title and refused to accept a conveyance of the property with full covenants of warranty entitling him to rely on these covenants as security against any loss he might sustain by reason of the defects in the title. After refusing such conveyance he cannot come into court and compel the defendants to make the same conveyance which they previously offered and which he had previously refused to accept, for in a similar case and upon this identical question this court said: "Plaintiff cannot come into court after refusing the only conveyance defendant could make and compel her to do the very thing which she had previously offered to do and which plaintiff had refused to allow her to do." *Friendly* v. *Elwert, supra.*

7, 8. The contention that the right upon his part to make this election is a legal right only and not an equitable right is not true, for the case of *Friendly* v. *Elwert* in which this doctrine was announced by this court was a suit in equity and was brought for the specific performance of a contract for the sale of land. If plaintiff had decided to accept the title which he now consents to take and to rely upon the covenants in defendants' deed as his protection against the defects in the title, he should have accepted them at the time when the deed was there for his acceptance. In-

stead of doing so, he withdrew from the bank the
$1,500 which he had placed there and subsequently
tendered that amount of money into court.    By with-
drawing the money from the bank and by refusing to
accept the title, and by failing to notify the bank of
his acceptance, which, under the understanding of the
parties, he was required to do before there was to
be a delivery of the contract to him, he terminated the
contract, if there was a contract,—hence there is no
contract even if it be assumed that this was a con-
cluded contract which this court or any other can en-
force.

9. Thus far we have treated this contract as it
should be treated if it were regarded as a valid, exist-
ing and enforceable contract, but we think that it was
the intention of the parties plainly expressed in the
writings themselves that it was not to be a contract
until a copy thereof had been delivered by the bank
to plaintiff after plaintiff's approval of the title and
notification to the bank of his approval, and the pay-
ment by the bank to the account of the defendants of
the $1,500 which had been placed there by plaintiff.

The only promise which plaintiff made to pay the
consideration for a conveyance was conditioned upon
his approval of the title and notification to the bank
of such approval.    Until he did approve the title
and did so notify the bank, he promised to pay noth-
ing whether the abstract should show the title to be
either good or bad.    There is no provision in the
contract whereby defendants agreed to cure the title
if there were defects in it, nor is there any provision
in the contract showing an intention upon the part of
either party that the contract was to go into im-
mediate effect, or was to go into effect at all until it
had been delivered by the bank to plaintiff.

116 Or.—25

The third paragraph of the first paper wherein it is provided that "The said Schlussels agree that upon the delivery of this contract the said Kinney may go upon the premises," etc., shows that plaintiff was to have no right to do anything in connection with the premises until after the delivery of the contract. The instructions to the bank recite that "There is deposited herewith three copies of a contract," and direct the bank to deliver one copy of the contract to the plaintiff when he shall signify to the bank that he has approved title to the premises, and the last clause in the letter of instructions to the bank directs the bank that in the event plaintiff shall fail to signify within thirty days from the date of the letter that he has approved title to the premises, then the bank is to deliver to defendants "said contracts and the deed deposited with you with this letter." These provisions show an intention upon the part of defendants to control the delivery of the contract until after the approval of title and notice to the bank of such approval, and the payment to defendants of the first payment of $1,500.

It is not usual to find contracts which are to go into immediate effect containing a provision that a copy of such contract shall not be delivered to one of the contracting parties until after that party has done certain specified things. Unless these provisions were inserted in these writings for the purpose of preventing a delivery of the contract as a contract to plaintiff they are meaningless, but if they are given the effect which it is obvious the parties intended them to have, then there was to be no delivery of the contract as such until after plaintiff had accepted title and notified the bank of his acceptance and had the $1,500 applied as a partial payment of

the purchase price. That being so, it is clear that the parties did not intend to enter into a contract which was to go into immediate effect, for, if they had so intended, there would have been no provision postponing the delivery of the contract to plaintiff until after his performance of the conditions imposed. Hence, while ordinarily the existence of a written contract does not depend upon a delivery of the writing, and the assent of the parties to the terms of the contract is ordinarily all that is required to conclude the contract, nevertheless the parties are free to attach to a writing, which on its face purports to be a contract, any terms they please as a condition without the happening of which no contract is to be entered into between them. The fact that delivery was not to be made until after the condition had been performed shows that the parties did not intend to create a present obligation, but to postpone the existence of the contract until after the performance by plaintiff of what he was required to do before obtaining a delivery of the contract.

10, 11. The fact that in the second paper the parties referred to the first as a contract is not controlling upon the question of whether the contract was to go into immediate effect or not. It is obvious that there was an agreement or understanding between them at the time they signed and placed these papers in the bank, but the agreement was that the first writing was not to be a binding contract until after the performance by plaintiff of the conditions agreed upon and the delivery of the writings of plaintiff. Hence, until performance and delivery, the writing was a mere proposed or tentative contract and reference to it as a contract by the

parties is not sufficient to show an intent that it should go into immediate effect.

The law upon this subject is well settled.

"An escrow is a written instrument, which by its terms imports a legal obligation, deposited by the grantor, promisor, or obligor, or his agent with a stranger or third person, who is not a party to the instrument, to be kept by the depositary until the performance of a condition or the happening of a certain event and then to be delivered over to take effect. * *

"Where an instrument is deposited as an escrow, it cannot become operative until the conditions upon which it is deposited have been performed or the contingency agreed upon has happened."

"It has frequently been held or broadly stated that the escrow does not take effect as a fully executed instrument until it is rightfully delivered by the depositary to the grantee, obligee, or payee. The better rule seems to be that an actual or manual delivery of an escrow is not necessary to invest the grantee or obligee with title, that a constructive delivery may be sufficient, and that the delivery is constructively made the moment the condition has been performed, or the event has happened, upon which the grantee or obligee is entitled to possession. * * The instrument in escrow takes effect in its entirety at the time when it goes into effect." 21 C. J., § 1, p. 865, § 25, p. 880, § 34, p. 888.

While it is true that the time when an instrument takes effect may be controlled by the manifest intention of the parties to the escrow agreement, this intention must be ascertained from the language used in the contract, and, applying to these writings the provisions inserted in them by the parties themselves and giving effect to all of such provisions, it is obvious that neither party intended for the first writing to become an enforceable contract until plaintiff

had fully performed the conditions upon which delivery to him of the contract was made to depend, and, since he never performed those conditions, the writing never became a concluded or consummated contract.

12. Plaintiff, in case specific performance cannot be had, prays for the alternative relief of a judgment for $5,000 because of his alleged expenditures amounting to between four and five thousand dollars which he claims to have made in the construction, or work preparatory to the construction, of a logging road, and which was expended off of the premises partly before and partly after the withdrawal of the papers. Under the terms of this proposed contract there was no provision for the construction of a logging road, except upon the full payment of the purchase price, when plaintiff was to become authorized to go upon the premises and construct a logging road. Expenditures made not upon the premises were not within the contemplation of the parties, nor were expenditures to be made upon the premises themselves until after plaintiff had approved the title and the $1,500 had been 'transferred to defendants' account, and then only upon the full purchase price becoming immediately due and collectible. Defendants, therefore, are not in any way obligated to pay or reimburse plaintiff on account of expenditures made by him with full knowledge of the terms of the proposed contract.

13, 14. But one other point needs to be noticed. The complaint contains certain allegations, which are denied by the answer, to the effect that after examining the abstract plaintiff notified the defendants that there were certain objections to the title and that defendants agreed that the objections were well

founded and promised to have the same cured; that the papers should remain in escrow until these defects were cured, and that when such defects were cured plaintiff would be notified and then be permitted to carry out the contract. There are two reasons why these allegations are of no avail. In the first place, being denied, the burden of proof to establish them was on the plaintiff and there was no proof offered which in any way tended to show that the defendants, or any other person authorized to contract for them, ever made any such promises. The other reason is that there is no provision in the contract which in any way obligated the defendants to cure the title in case there was a defect in the title. There was, therefore, no consideration for this alleged subsequent agreement, and if such a contract had been entered into it would have been a mere *nudum pactum* and for that reason unenforceable.

Plaintiff also seeks to invoke the doctrine of estoppel, but there was no allegation or proof of fraud, or of any other circumstances upon which an estoppel could arise.

The decree should be, and is, affirmed.

AFFIRMED.

McBRIDE, C. J., and BROWN, J., concur.

BELT, J., Concurring.—In my opinion the contract in question is mutually binding in that plaintiff was bound to buy and defendant was obliged to sell. If defendant had tendered a deed and abstract disclosing a marketable title, plaintiff would have been compelled to pay the balance of the purchase price. Under such circumstances he could not have arbitrarily nor capriciously refused to approve the title.

Neither should plaintiff be put in default for refusal to approve a title which, when submitted to him, was defective. When plaintiff, however, entered upon the land of defendant for the purpose of constructing and laying out his logging road, the entire balance on said purchase price, under the terms of the contract, became immediately due and payable. Plaintiff by so doing in effect said, "I am willing to approve the title as it stands." Plaintiff is not entitled to invoke the equitable remedy of specific performance for the reason he has not tendered the amount due on the purchase price. He has not shown performance of the contract on his part. To demand specific performance as stated in Pomeroy's Equity Jurisprudence, fourth edition, Section 1408, the party seeking such relief must show himself to have been "ready, desirous, prompt, and eager" to perform. When plaintiff entered upon the land to construct his logging road, he knew the balance of the purchase price was immediately due and payable, yet at this late date he has failed to make such tender. He cannot thus trifle with his contract and invoke the aid of equity to compel specific performance. If this cause were dismissed without prejudice and plaintiff should commence another suit to obtain the same relief, it ought, for the reason above stated, to be dismissed. I therefore concur in the result as announced by Mr. Justice RAND.

COSHOW, J., Concurring.—The writings in this case form a completed contract. By its terms and the letter of instruction to the bank it becomes an escrow. It is a typical escrow: 21 C. J. 865. An escrow does not become a binding agreement unless the conditions upon which it was deposited have been complied with:

21 C. J. 880, § 25. The exceptions to this rule are not applicable to this case and for that reason require no further notice. The conditions in the escrow were not performed by the plaintiff, and for that reason he has no binding or enforceable contract. Plaintiff is not entitled to exact specific performance of a contract which does not exist. It is clear from the writings deposited that the intention of both parties thereto was to make an escrow. The contract itself was not to be binding or effective until the conditions embraced in the writings were complied with. For these reasons I concur with my Brother RAND.

BURNETT, J., Dissenting.—The writer of this opinion agrees that the plaintiff has not made a case compelling specific performance of the contract for the sale of land. One good reason for the conclusion is that it is pleaded in the complaint and appears in evidence that the plaintiff has gone upon the land and built his logging road for the purpose of removing timber from said premises. By the explicit provisions of the contract, upon which the plaintiff relies, this entry upon the land causes the entire balance due on the purchase price to become immediately due and payable. It is hornbook law that specific performance of a contract to sell land cannot be compelled unless the plaintiff shows that he has performed, or tenders performance of all the covenants on his part necessary to be fulfilled before a conveyance can be required. Thus far the plaintiff has tendered only $1,500 of the total purchase price of $5,500. It is specific, or complete, performance which courts of equity decree. They will not make piecemeal of a controversy and direct partial performance, leaving the remainder for future adjudication. For this reason

alone, if for no other, he is not entitled to specific performance.

I dissent, however, from the reasoning of Mr. Justice RAND in denying relief to the plaintiff. The central idea of his opinion is that there was no delivery of any contract so as to call for performance on the part of either party. However natural this theory may seem, yet it is erroneous. Taking both instruments as constituting one, because they relate to the same subject matter, we must consider them both together. The parties either made a contract or they did nothing whatever. It is very plain that they inaugurated a procedure which, if it had been complied with by both parties, would have resulted in a conveyance of the land by the defendants to the plaintiff. A common-sense view of it is that they made an escrow agreement involving certain conditions and delivered that agreement so as to take effect and bind them both according to its terms. As said by Mr. Justice HARRIS, in *Foulkes* v. *Sengstacken*, 83 Or. 118, 129 (158 Pac. 952, 163 Pac. 311),—

"A consummated escrow involves two deliveries: (1) To the depositary; and (2) to the grantee."

In the sense there indicated, there was a delivery of the papers sufficient to support a binding escrow agreement between the parties.

Evidenced as it was by both these documents, there were mutual covenants. It is true that the plaintiff was called upon to approve the title. On the other hand, as a condition precedent to that approval, the defendants bound themselves to furnish an abstract of title, the same to show title in them free and clear from all encumbrances, and Kinney was to have five days after the receipt of that kind of an abstract

for the purpose of examining the same. Beyond controversy, the defendants have never furnished such an abstract. Hence they are in no position to rescind even the escrow agreement, because they did not make it possible for the plaintiff to approve the title. No one pretends that the defendants could have withdrawn the papers from the bank prior to thirty days from the date of the letter to the bank. Why? Because there was a contract between the parties controlling their conduct to the contrary. But that contract contained mutual covenants and neither party could put the other in default or rescind without first performing, or tendering performance, on his part. Reading both papers together, furnishing a perfect title abstract was a condition to be performed by defendants precedent to plaintiffs approving the title. To furnish an abstract showing perfect title necessarily implies that the defendants must perfect the title, else they could not produce the requisite abstract. On the other hand, suppose the plaintiff had approved the title and had not taken the contract from the bank, would the agreement have been void for want of delivery? The answer is no, and the reason is that both the parties had done some act indicating recognition of the writings as a binding stipulation. In law this amounts to delivery, irrespective of whose hand clutches the paper.

As said by Mr. Chief Justice LORD in *Fain* v. *Smith,* 14 Or. 82, 84 (12 Pac. 365, 367, 58 Am. Rep. 281):

" * * The delivery is defined to be that part of the operation in executing the deed by which the grantor signifies his intention when and how it is to take effect. It is required by the law, in order to demonstrate beyond doubt that the party making the deed meant it to be his act. No precise formula is required. It is not necessary there should be an actual

handing over of the instrument to constitute a delivery. A deed may be delivered by doing something and saying nothing, or by saying something and doing nothing, or it may be by both. * *

"Nor is it essential to the complete execution of the deed, that it should be delivered to the party intended to be benefited by it. It may be valid, although it remains in the possession of the grantor."

The principle thus enunciated applies to the escrow agreement to be extracted in this instance from a consideration together of the two documents. As in the case of all other mutual covenants, neither party to an escrow contract has a right to disregard it or to declare the other party in default without first fulfilling his own engagement or at least tendering performance on his part.

It is argued that defendants could not make perfect title, but there is no evidence of that, and besides they themselves allege that they are the owners in fee simple of the land. Still further, if it becomes impossible for a vendor to convey the land he had agreed to convey, he must allege it in defense of a suit for specific performance: *Columbia River Co.* v. *Smith,* 83 Or. 137 (162 Pac. 831, 163 Pac. 309). No such defense appears in the record. It is also contended that the plaintiff has refused the title tendered and hence cannot come into court and demand a conveyance of the same title. This reasoning is fallacious, because there is no evidence or pleading that the plaintiff refused the title. All that appears is that the plaintiff directed attention to certain defects in the abstract which are practically confessed. To furnish an abstract is but one of the terms of the contract. To object to the abstract is not necessarily to object to the title. As said by Mr. Chief

Justice Lord in *Kane* v. *Rippey,* 24 Or. 338 (33 Pac. 936):

" * * * It may be true that the title tested by the original record and conveyances and other facts not upon the face of the abstract is good and free from defects. It may be true that the curative acts will obviate the objections suggested, and the statute of limitations bar the uncanceled encumbrance, but these are matters which may involve litigation or judicial inquiry to determine the validity of title. The title, as disclosed by the abstract, is not the good title the defendants agreed to convey."

Because the separate covenant of the defendants to furnish a clear abstract is one which may be waived, provided he has complied with the contract on his part, the plaintiff is entitled to compel conveyance of the land despite the fact that the abstract tendered was not such a one as the contract called for. This is what he has attempted to do, in accordance with the rule laid down by Mr. Chief Justice Eakin, in *Kuratli* v. *Jackson,* 60 Or. 203, 209 (118 Pac. 192, 1013, Ann. Cas. 1914A, 203, 38 L. R. A. 1196, and note):

"There is no dissent from the statement that plaintiff is entitled to a decree of specific performance, if he is willing to accept a deed from the vendor alone, with covenants as broad as those called for in the contract; and he may then resort to his legal remedy, if he has one, against the vendor."

No tender of title deed has ever been made to the plaintiff. He has never indicated that he would not accept such a deed. He has only objected to the abstract, concerning which a separate covenant was made.

In brief, the defendants have not performed their part of the contract, considering the transaction as an

escrow agreement, in that they did not furnish the abstract. Under those conditions they had no right whatever to rescind even the escrow agreement. The situation is one where neither party has shown a right either to rescind or to compel specific performance of the principal contract. The situation is like that portrayed in *Annand* v. *Austin*, 86 Or. 403 (167 Pac. 1017, 168 Pac. 725), and *Wurfel* v. *Bockler et al.*, 106 Or. 579 (210 Pac. 213), where neither party having performed the part of the contract required of him, the suit for specific performance was dismissed without prejudice.

Time was not made the essence of this contract, and, even if it had been, the defendants waived it by not acting promptly on the failure of Kinney to approve the title thirty days after April 23d, the date of the letter to the bank. They gave no notice to the plaintiff of their intention to withdraw the papers or to rescind the contract. By their delay until June 15th before they acted, it may be said they lulled the plaintiff into a sense of security, and they cannot then act without notice to him and giving him a reasonable opportunity to perform what was required of him. The stipulation that time is the essence of the contract, even if it had been made in this instance, required both parties, plaintiff and defendants, to act accordingly or they will be deemed to have waived it: *Graham* v. *Merchant*, 43 Or. 294 (72 Pac. 1088); *Gray* v. *Pelton*, 67 Or. 239 (135 Pac. 755); *Johnson* v. *Berns*, 111 Or. 165 (209 Pac. 94, 224 Pac. 624, 225 Pac. 727); *Denning* v. *Bailey*, 112 Or. 621 (229 Pac. 912). To turn the plaintiff out of court absolutely and irrevocably is to put a premium upon the conduct of the defendants as covenant breakers.

The opinion of my Brother RAND is illogical and inconsistent in affirming the decree of the Circuit Court removing a cloud from the title of the defendants. A cloud is a claim which is apparently valid but in fact without foundation. It is thus defined in 11 C. J. 920:

"An outstanding claim or encumbrance which if valid would affect or impair the title of the owner of a particular estate, and which apparently and on its face has that effect, but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question."

If the reasoning of the opinion is correct, there was no delivery and hence no contract upon which any claim could be based. Under that theory there never has been any outstanding claim or encumbrance. Hence, it does not present even an academic question for our decision. The parties either made a contract or they did not make one. If they did not make a contract it is not incumbent upon them to perform anything. On the other hand, if they made a contract they are each bound to perform it. In that the defendants failed in performance of one of their covenants in the contract, they are not in a position to either enforce or rescind. The plaintiff is equally remiss in performance on his part, and that justice, in which equity delights, ought to move us in accordance with *Annand* v. *Austin* and *Wurfel* v. *Bockler, supra,* to dismiss the plaintiff's suit without prejudice, and with it in like manner the cross-bill of the defendants seeking to remove a cloud from their title.

BEAN, J., concurs with this opinion.