## ESTERO BAY ESTATES, Inc., v. GIDDENS et al.

(District Court, S. D. Florida. June 30, 1926.)

1. Courts ☞312(8)—Federal court held not deprived of jurisdiction because one reason for formation of complainant, a foreign corporation, was that it might take title to land and invoke that jurisdiction (Judicial Code, § 37 [Comp. St. § 1019]).

The forming of a corporation under the laws of another state, to take title to land bought by the incorporators, because of other valid and proper reasons, does not deprive a federal court of jurisdiction of a suit by the corporation to quiet title to the land, under Judicial Code, § 37 (Comp. St. § 1019), because another reason for its formation was that jurisdiction of that court could be invoked in such litigation if it became necessary.

2. Vendor and purchaser ☞18(3)—Holder of option contract, delaying action beyond time fixed by contract, held required to elect within time given to accept or reject title tendered.

Where the holder of an option to purchase land, after notice of his intention to exercise the option, objected to the title offered on account of alleged defects and liens, and delayed action beyond the time fixed by the contract for closing the sale, notice by the vendor that it

must be closed by a stated date or he would consider the contract canceled, *held* to make time of the essence and to require the purchaser to elect within that time to either accept or reject the title tendered.

**3. Vendor and purchaser** ⊚⟹18(½).

A subsequent verbal promise by an owner of land to the holder of an option to purchase, to remove alleged defects in the title, not required by his contract, *held* without consideration and not enforceable.

In Equity. Suit by the Estero Bay Estates, Inc., against L. B. Giddens and Earl S. Craft. Decree for complainant.

Kay, Adams, Ragland & Kurz, of Jacksonville, Fla., for complainant.

Cooper, Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., and John B. Singeltary, of Bradenton, Fla., for defendants.

JONES, District Judge. This cause comes on for final hearing before the court. It is based upon a bill in chancery, filed by complainant, a Delaware corporation, to remove clouds from the title to certain lands in Lee county, Fla., alleged to be owned by the complainant. These clouds consist of two contracts—one made October 9, 1924, between James W. Berry and Anna W. Berry, his wife (at that time the owners of the property in question), and L. B. Giddens, for the sale to Giddens of said lands, and the other a contract dated November 28, 1924, between L. B. Giddens and E. S. Craft, for the sale of the same lands. The contract between Berry and wife and Giddens has been filed for record and recorded in Lee county, Fla., but the Giddens-Craft contract has not been recorded.

The bill seeks, in order to remove these clouds, a decree that the contract, dated October 9, 1924, between Berry and wife and Giddens, was abandoned and rescinded and has no binding force whatever as to the lands described in the bill; that the contract between Giddens and Craft, dated November 28, 1924, has no force or validity with respect to the lands; that the complainant by virtue of a deed to it, dated May 22, 1925, from Berry and wife, acquired the fee-simple title to the lands, free and clear of any claim in favor of the defendants, Giddens and Craft; that Giddens be required to execute a proper release of all claims under his contract; and that Giddens and Craft and all persons claiming through them be restrained from asserting any right in the lands in question by virtue of these contracts.

[1] At the outset we are confronted by a question of jurisdiction. The defendants, in the first paragraph of the amended answer to the amended bill of complaint, allege, in substance, that one of the purposes in "procuring the incorporating of said complainant corporation was and is the bringing of this suit in this court, and these defendants are advised and so allege that this honorable court is without jurisdiction to hear and determine this case."

This proposition is based upon the following statutes:

"If in any suit commenced in a District Court, * * * it shall appear to the satisfaction of said District Court, at any time after such suit has been brought * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said District Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable * * * under this chapter, the said district court shall proceed no further therein, but shall dismiss the suit. * * *" Section 37, Judicial Code (section 1019, U. S. Comp. Stat. 1918).

And:

"No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made." Part paragraph 1, § 24, Judicial Code (section 991, par. 1, U. S. Comp. Stat. 1918).

The facts in the instant case show it does not come within the terms of the above-quoted portion of section 24 of the Judicial Code. See Realty Holding Co. v. Donaldson, 268 U. S. 398, 45 S. Ct. 521, 69 L. Ed. 1014.

Considering the provisions of section 37, Judicial Code, the facts covering the reasons or grounds for the incorporating of this company are set out in a stipulation, signed by counsel for both complainant and defendants, filed at the time of final hearing. One of the reasons for incorporating under the laws of a foreign state was "that, if litigation should arise involving the title to said lands against or by such corporation, it could invoke the jurisdiction of the federal court, and thereby avoid the long delays which would be incident to a suit brought in the state circuit court. * * *"

Other grounds set out in the stipulation are:

First. That the incorporators were business men, and did not desire to have their investment in this property connected with their personal business.

Second. If title were taken in the name of a corporation, the property could be sold more expeditiously, as the joint consent of the associates and their wives would not be required.

Third. That the stock which would be issued in a corporation could be used by the incorporators as collateral, should they desire to use it.

Fourth. To avoid any inconvenience that would arise should any of the associates die.

Fifth. To avoid personal liability upon the mortgage and notes which the incorporators were to give as part of the purchase price of the property.

I am of the opinion that these are proper reasons for incorporating, and show that the right to seek the jurisdiction of the federal court in this suit was not the sole reason for incorporating. There is no doubt in my mind, therefore, that this court has jurisdiction in this case. See Acord v. Western Pocahontas Corporation (C. C.) 156 F. 989, affirmed 174 F. 1019, 98 C. C. A. 625, certiorari to the Supreme Court denied, 215 U. S. 607, 30 S. Ct. 408, 54 L. Ed. 346; Doane v. California Land Co., 243 F. 67, 155 C. C. A. 597 (C. C. A. 9th District), certiorari denied by the Supreme Court, 245 U. S. 660, 38 S. Ct. 60, 62 L. Ed. 535.

[2] Coming to the merits of this case, there is little controversy over the material facts, which are as follows:

The lands in question were conveyed to James W. Berry and wife by warranty deed, dated February 10, 1920, from Albert H. Berry, thereby creating in James W. Berry and his wife an estate by entireties. The contract which they entered into October 9, 1924, for the sale of these lands to L. B. Giddens, gave to said Giddens, in consideration of $100, the right to purchase "within thirty days from date hereof," the lands involved in this suit. The purchase price of $73,500 was payable, $35,000 in cash upon delivery of a warranty deed and the balance in one and two years, with interest at the rate of 8 per cent. per annum, deferred payments to be evidenced by promissory notes and secured by first mortgage on the property.

It further provided in the event Giddens should desire to exercise his right of purchase within the thirty days, he should notify Berry and wife, and they should then furnish "abstract of title to the said party of the second part (Giddens), and to allow said party of the second part ten days in which to examine the abstract." It was also provided that the land shall be free and clear "of all incumbrances and liens of every nature and kind whatsoever."

Under date of November 8, 1924, within the thirty days provided in the agreement, Giddens notified James W. Berry, in writing, that he had accepted the proposition for the purchase of these lands. James W. Berry, in accordance with the agreement, delivered to Giddens on December 1, 1924, abstracts of title to the lands. Under date of December 2, 1924, Giddens wrote a letter to James W. Berry, in which he acknowledged receipt of the abstracts, and after calling attention to the clause in the agreement of October 9, 1924, that the land shall be free and clear of incumbrances and liens, calls attention to the fact that there is a suit involving these lands, pending in the circuit court of Lee county, Fla., wherein one Samuel H. Seymour sues James W. Berry and his wife and also Albert H. Berry, their grantor, claiming an undivided interest in said lands, pointing out that a notice of lis pendens in said suit had been placed of record in Lee county, Fla., and says: "I am advised that this constitutes a lien and charge upon your land, and we, of course, expect and must ask that you have this incumbrance removed before asking us to accept the title, or make some reasonable or satisfactory provision for taking care of this charge upon the land."

After receipt of this letter by Berry, and after a period of 10 days had elapsed since delivery of the abstracts and hearing nothing further from Giddens, Berry wrote Giddens, advising that as he had furnished the abstracts as provided in the agreement and had given more than ample time to examine it, and, as he had given Giddens verbal notice that a deed and mortgage were ready for his examination, says: "We now give you final notice that, if you do not fulfill your part in the agreement on or before December 27, 1924, we will consider negotiations terminated through your refusal to comply."

On December 27, 1924, Giddens, accompanied by his attorney, met James W. Berry in Ft. Myers, Fla., and the question of defects in the title to these lands, as shown by the abstract, were taken up personally. The attorney for Giddens pointed out a number of other defects in this title and objections to same, and claims that Berry agreed to correct them. Other conferences were held between these parties between January 6th and 10th, at which the alleged defects in title were gone into further. The defendants claim that

Berry made further representations that he would clear up these defects, Berry contending, however, that he could successfully defend the Seymour suit and would do so.

On January 14, 1925, Berry wrote a letter to Giddens, advising him that the deed to these lands was ready for delivery, stating that the delay in closing within the terms of the contract of October 9, 1924, was known to both of them and was on account of exceptions, which Giddens had taken to the abstract, and, under date of January 26, 1925, Berry wrote Giddens, advising that he would not favor him any further by delaying the matter, that Giddens had not taken the land within the time prescribed, and notified him that the contract was canceled and returned to Giddens the original check for $100, which he had given in consideration of the agreement of October 9, 1924.

Giddens, after receipt of this letter, called on Berry personally, insisted that he go on with the removal of the defects of title, and offered to return the check to him, but Berry refused.

About the middle of March, Berry and wife entered into negotiations for the sale of this property to James W. Blanding, who is now president of the Estero Bay Estates, and on March 23, 1925, entered into a contract with Blanding for the purchase of said lands by Blanding upon the following terms: $6,000 in cash as a binder, $44,000 in cash on delivery of a warranty deed, a mortgage for $62,500, Berry and wife to convey the lands by warranty deed and to defend the Seymour suit, and a suit subsequently filed in the state court, by Albert H. Berry, involving these lands.

Blanding, before entering into this contract, was fully advised as to the suits in question and of the contract with Giddens and the circumstances surrounding said transactions. Blanding organized the Estero Bay Estates, incorporating same under the laws of Delaware, and James W. Berry and Anna W. Berry, his wife, conveyed the property by warranty deed, upon the conditions aforesaid, to the said Delaware corporation. The cash payments of $50,000 were made to Berry and wife and the mortgage for $62,500 duly executed.

The defendants claim by virtue of the contract between Berry and wife and Giddens that they (the defendants) have an interest in these lands, that the complainant purchased with knowledge of their rights, and contend that the relief sought in this bill should not be granted. They contend that it was the duty of Berry and wife to remove or satisfy the incumbrances and liens against the property, including the Seymour suit, and, until this was done, Berry having subsequently verbally promised to correct these defects, they were not required to make any payment or do anything further until these liens and incumbrances were removed.

There was no promise on the part of Berry and wife in the contract of October 9, 1924, to take any steps to remove incumbrances, liens, or clouds, and it is clear from the letter of Giddens to Berry, dated December 2, 1924, that the title to these lands, as shown by the abstract, was not acceptable. Berry, after the 10 days allowed by the terms of the contract for examination of the abstract had expired, notified Giddens in writing that he was ready to deliver a deed to the property, and, unless Giddens fulfilled his part of the agreement on or before December 27, 1924, "we will consider negotiations terminated through your refusal to comply."

This notice, to my mind, made time of the essence of the contract and Giddens should have declared his intentions within the time so specified.

The situation at this time is stated in the following language, to be found on page 51 of the defendants' original brief:

"Berry and wife had a defective title and were unable to convey, according to their contract; they were therefore in default, and Giddens could either elect to proceed with or abandon the contract. 2 Story, Eq. Juris. § 779; Matlock v. Buller, 10 Ves. 315."

Not only could Giddens have made this choice, but he should have done so. The reason for this rule is clearly expressed in Pomeroy's Specific Performance of Contracts (3d Ed.) § 411, which is as follows:

"As already stated, time is always material, even if not essential, in a unilateral contract, * * * and a delay by the one to whom the offer is made, although not great, will be closely examined by the court, and, if not fully explained and excused, will prevent such party from enforcing the stipulation. And, for the same reason, the delay of the vendee in deciding whether he will accept or reject the title offered him by the vendor operates unfairly and unequally, and must be justified, because the vendee can enforce whether the title is good or bad, while the vendor can enforce only when the title is good, and the two parties do not, therefore, stand upon the same footing."

An English court, in Spurrier v. Hancock, 4 Ves. 667, referring to the action of the vendee in such a case, says:

"Immediately he ought to have inquired into the title, and, if it was not as he liked,

he ought to have said either that he would take it or not."

See, also, Knox v. Spratt, 23 Fla. at page 68, 6 So. 924; Kinney v. Schlussel (Or.) 239 P. 818; Friendly v. Elwert, 57 Or. 599, 105 P. 404, 111 P. 690, 112 P. 1085, Ann. Cas. 1913A, 357; Johnson v. Fuller, 55 Minn. 269, 56 N. W. 813; Weir Investment Co. v. Scattergood, 42 Colo. 54, 94 P. 19.

[3] Giddens made no election along these lines, and the defendants justify their failure to make such election within the time required by the contract and the notice from Berry, upon verbal promises made by Berry, beginning December 27, 1924, that he would remove or satisfy the defects in this title.

There was evidently no consideration for these subsequent promises made by Berry, and, this being true, they were unenforceable. Public Service Corporation of New Jersey v. Hackensack Meadows Co., 72 N. J. Eq. 285, 64 A. 976; Kinney v. Schlussel (Or.) 239 P. 818.

The latter case (Kinney v. Schlussel) is very similar to the instant case, as, by the terms of the contract in that case, Schlussel agreed to furnish "an abstract of title to date, showing title free and clear of all incumbrances in the said Schlussel." The court, in passing upon the enforceability of subsequent promises to cure defects in the title, said:

" * * * There is no provision in the contract which in any way obligated the defendants to cure the title in case there was a defect in the title. There was therefore no consideration for this alleged subsequent agreement, and, if such a contract had been entered into, it would have been a mere nudum pactum and for that reason unenforceable."

For these reasons I am of the opinion that the defendants have no interest in these lands growing out of the contracts, that they are clouds upon the title of the complainant, and that the complainant is entitled to the relief prayed for in its bill of complaint.

A final decree to this effect, therefore, will be entered herein.