Argued and submitted September 10, 1979, affirmed January 28, 1980

# SPRINGFIELD INTERNATIONAL RESTAURANT, INC., et al,

*Appellants,*

*v.*

# SHARLEY, et al,

*Respondents.*

# (No. 75-0125, CA 11467)

605 P2d 1188

Michael L. Williams, Eugene, argued the cause for appellants. With him on the briefs were Arthur C. Johnson, Timothy J. Sercombe, Martha L. Reidy, Donald K. Armstrong, and Johnson, Harrang & Mercer, Eugene.

Scott M. Galenbeck, Springfield, argued the cause for respondents. With him on the brief was Lively & Wiswall, Springfield.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This is primarily an action for conversion by wrongful execution. The trial court, sitting without a jury, awarded plaintiffs nominal damages of $25 and punitive damages of $1500. Plaintiffs appeal, urging their entitlement to far greater damages.

The facts involve a series of complex, multi-sided financial transactions that all relate to a restaurant located in a large motel-restaurant complex at an interstate highway interchange in Springfield. Over about a year-and-a-half period several different persons had a variety of interests in the restaurant. The execution alleged to have been wrongful consisted of the seizure of the cash, checks, credit card receipts, food and liquor located at the restaurant. The basic issue is whether these items were the property of plaintiffs, or, instead, the property of the judgment debtor, William Brenner, as claimed by defendants.

Brenner leased the restaurant facilities when the motel-restaurant first opened in early 1973. He began operating the "International Restaurant" therein. A liquor license for the restaurant was taken out under the names of Brenner and his wife.

Larry Sharley is the sole stockholder in M & L Enterprises, Inc. In mid-1973, Brenner agreed to sell the restaurant operation to M & L Enterprises, one of the conditions being that M & L obtain a transfer of the liquor license. Sharley, through M & L Enterprises, then took possession of the restaurant and operated it for several months. When complications arose regarding the liquor license transfer, Brenner cancelled his agreement to sell to M & L, and resumed operation of the restaurant. M & L then sued Brenner and obtained judgment against him for $38,150. The terms of that judgment permitted it to be paid in installments. The first installment was due November 10, 1974.

Bernard Cooke, one of the plaintiffs, worked inter-

mittently for Brenner, on a rather informal basis, as the manager of the International Restaurant—both before and after the months that Sharley had possession of and operated the restaurant.

John Rapolla and Rita Squier worked intermittently at the restaurant during the times Cooke managed it. Seemingly, like everybody involved in this controversy, they were interested in buying the restaurant.

On October 1, 1974, Brenner executed a bill of sale that purported to transfer all the restaurant assets except the inventory to Cooke. Cooke then proceeded to organize Springfield International Restaurant, Inc., in which he was the sole stockholder, and transferred those restaurant assets covered by the bill of sale to the corporation. About the same time, Cooke, as seller, and Rapolla and Squier, as buyers, entered into an agreement whereby Cooke was to sell them all of the outstanding shares in Springfield International Restaurant, Inc. As part of the purchase price, Rapolla and Squier were required to get Sharley to assign to Cooke the judgment that M & L Enterprises had against Brenner.

Sharley, as president of M & L, and the corporate secretary both executed such an assignment on November 7, 1974. It was taken to Cooke, apparently to be reviewed for form, and then placed in escrow with M & L's attorney pending closing of the sale of the restaurant from Cooke to Rapolla and Squier.

The first installment of the M & L judgment against Brenner was not paid November 10 when due. Sharley, on behalf of M & L, obtained a writ of execution on that judgment. On November 26 the sheriff levied on that execution by going to the restaurant and seizing all of the cash, checks, credit card receipts, food and liquor.

I

In support of their wrongful-execution claim, plaintiffs, Cooke and Springfield International Restaurant,

Inc., first claim that they need not prove they had legal title to the property seized, but only that they had the right to possession and control. This contention is based on *Mustola v. Toddy,* 253 Or 658, 662-63, 456 P2d 1004 (1969), in which the court adopted the definition of conversion found in § 222A of the Restatement (Second) of Torts (1965). That section provides in part:

> "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the *right of another to control* it that the actor may justly be required to pay the other the full value of the chattel." (Emphasis supplied.)

Regardless of who would have sufficient right of control of a chattel to sue for conversion in other contexts, in the context of conversion by wrongful execution we conclude that legal title is controlling. ORS 23.040(1) permits execution "[a]gainst the property of the judgment debtor." It would render this statute meaningless if a judgment debtor could transfer to another some right of control over property he had title to and thereby insulate it from execution.

The extreme nature of plaintiffs' reliance on Restatement (Second) of Torts, § 222A (1965), is illustrated by their argument: "Even if [Springfield International Restaurant, Inc.] is viewed as a bailee holding Mr. Brenner's goods in a bailor-bailee relationship the corporation still has the right to bring an action [for conversion for] the total value of the goods seized * * *." Writs of execution are often served on banks. It would be preposterous to conclude that, when a judgment creditor executes on the property of a judgment debtor that is in the possession of a bank, the bank then has a cause of action against the judgment creditor for conversion. *See* Restatement (Second) of Torts, § 266 (1965).

Plaintiffs seem to claim alternatively that they, not Brenner, had title to the property seized. Plaintiff Cooke also contends that any execution was wrongful because the underlying judgment had been assigned to him. The persons involved structured their various

[137]

transactions in such ways that we cannot say as a matter of law that plaintiffs are entitled to prevail on either theory.

The October 1 bill of sale from Brenner to Cooke covering the restaurant assets states "except that the transfer does not include any inventory." This document indicates that title to the inventory remained in Brenner. Cooke then formed his wholly-owned corporation, Springfield International, and transferred to it "all personal property, assets, tangible and intangible, except inventory * * *." Cooke's agreement to sell the stock in his corporation to Rapolla and Squier included the following: "The Seller represents and warrants that Springfield International Restaurant, Inc. has purchased all of the assets of the [restaurant] except inventory."

The sale agreement between Cooke and Rapolla/Squier also stated:

"Business of the corporation [*i.e.,* Springfield International Restaurant, Inc.] shall be conducted by William F. Brenner up to the date of closing in the normal and regular manner and will not enter into any contract except as may be required in the regular course of business without the approval of the Purchasers herein."

The sale was never closed. If, as contended by plaintiffs, Brenner had no interest in the restaurant after the October 1 bill of sale to Cooke, this provision is inexplicable.

Equally mysterious is the parties' treatment of the liquor license. It remained in Brenner's name up to the day of execution. Cooke, who claims he received all of Brenner's interest in the restaurant almost two months before the execution, never applied for a transfer of the liquor license to his name or the name of his corporation. All of the parties involved were experienced business people. More specifically, all of them knew that the Oregon Liquor Control Commission had previously fined Brenner for permitting

Sharley, through M & L Enterprises, to operate the restaurant under Brenner's license the prior year. Under these circumstances, the lack of any effort to transfer the license to Cooke or his corporation at least supports a strong inference that Brenner retained some interest in some of the restaurant assets up until the time of execution.

We interpret the trial court's award of nominal damages to be based on a finding that plaintiffs had not proven they owned all of the property seized, and the further finding that there was no basis in this record to determine the value of plaintiffs' property that was seized. There is substantial evidence to support such findings. In fact, had defendants cross-appealed, the closer question would be whether there was evidence that plaintiffs owned any of the property.

Turning to the question of the assignment of the underlying judgment from Sharley and M & L to Cooke, we again confront curious provisions in the various transactions. Cooke's agreement to sell to Rappola and Squire refers to the assignment of that judgment and then states:

> "All payments made on this judgment prior to closing shall go to the judgment holder [*i.e.*, M & L Enterprises] and the Seller herein [*i.e.*, Cooke] is to receive a commensurate amount added to the [sale price]."

It thus appears that the parties to that agreement, including Cooke, intended that the contemplated assignment of the judgment did not affect Brenner's obligation to make payments to Sharley through M & L between the date of the agreement and the closing of the restaurant sale.

Plaintiffs now make a variety of arguments for a contrary conclusion:

> " * * * [T]he assignment of the judgment to Cooke removed all rights to execute upon it. The placing of the assignment into escrow did not somehow mean

that Sharley could act as if the assignment had never taken place. The very nature of an escrow places the subject of the escrow beyond the control of the grantor * * *."

Plaintiffs seemingly confuse an assignment in the sense of a present, immediate transfer of rights, *i.e.,* an executed transaction, and promise to assign in the future or conditional promise to assign, *i.e.,* an executory transaction. "An 'assignment' of a right is a manifestation to another person by the owner of the right indicating his intention to transfer, without further action or manifestation of intention, the right to such other person or to a third person." Restatement, Contracts, § 149(1) (1932). "A contract to assign a right in the future is not an assignment * * *." Restatement, Contracts, § 166(1) (1932).

All of the evidence at trial was to the effect that M & L's November 7 assignment to Cooke of its judgment against Brenner was only one part of the larger transaction whereby Cooke intended to sell Springfield International Restaurant, Inc., to Rapolla and Squier; with the formal delivery of the assignment to Cooke actually effectuating the assignment not intended until that transaction closed in escrow; and with closing dependent on numerous conditions that had not yet occurred at the time of execution of the assignment. The trial court was entitled to find that permitting Cooke to review the assignment for form before it was placed in escrow was not a formal delivery of the assignment to Cooke. Under all these circumstances, the trial court was entitled to conclude that there was no assignment in the legal sense of an immediate, unconditional transfer of rights.

Plaintiffs also overstate the law in the claim that "the very nature of an escrow" terminated M & L's rights to execute on its judgment. The effect of placing an assignment of judgment in escrow depends primarily on the parties' instructions to the escrow agent. *See Vendeventer v. Dale Construction,* 277 Or 817, 562 P2d 196 (1977); *Hays v. Hug,* 243 Or 175, 412 P2d 373

(1966); *Kinney v. Schlussel et al,* 116 Or 376, 239 P 818 (1925). There is no evidence in this record of the instructions to the escrow agent—other than inferences that might be drawn from the Cooke-Rappola/Squier agreement to convey the restaurant. And, as stated above, that agreement provided that all payments made on the judgment prior to closing shall go to the judgment holder, M & L Enterprises. Under these circumstances, there is no basis in this record for saying that as a matter of law the mere act of placing an assignment of judgment in escrow pursuant to unknown instructions terminated M & L's right to execute on the judgment.

## II

In addition to the wrongful-execution claim, Cooke pleaded two causes of action against M & L Enterprises and two causes of action against Sharley: tortious interference with contract and tortious interference with a business relationship. *See generally, Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 582 P2d 1365 (1978). All of these causes of action are based on the fact that after the seizure of the restaurant's assets the existing relationship and contemplated sale between Cooke and Rapolla/Squier collapsed.

The trial court entered judgment for defendants on all of these causes of action. Plaintiff Cooke claims some error was thus committed, although the scope of the assignment of error is unclear. His brief states:

"The court erred in finding for the Defendants on Plaintiff Bernard E. Cooke's cause of action for interference with his prospective sale of the restaurant.
" * * * * * *
"The [complaint] should be construed to assert a cause of action stating a general tort for interference with economic and business relations or loss of prospective advantage rather than only the narrower tort of interference with a specific contract * * *."

This may mean that plaintiff is abandoning his claim for interference with contract—although on the facts

[141]

of this case in which the business relationship claimed to have been interfered with was the contemplated sale to Rapolla and Squier, which was already the subject of a signed agreement, plaintiff apparently finds more significance than we do in how his claim should be labeled.

Aside from the issue plaintiff has preserved, the precise nature of the error he claims was committed is unclear. Plaintiff's brief states:

" * * * the evidence also established that one result of the wrongful execution was to destroy Cooke's ability to sell [the restaurant] because [the owner of the motel-restaurant complex] defaulted Cooke and Brenner on their lease * * *."

This statement is not supported by the record. All of the evidence is that one or two days after the execution, the owner of the restaurant facility, Cooke and Brenner met and all signed a lease cancellation agreement. There is no evidence that Cooke's participation in the lease cancellation was other than voluntary. So as a matter of causation, Cooke's inability to sell the business could have been due to his own conduct.

Plaintiff's brief also states:

" * * * Since the trial court found the purpose of Sharley was to harm Cooke's business, and since execution on the escrowed and assigned judgment obviously blew apart the prospective sale to Rapolla and Squier, Plaintiff is entitled to recover as a matter of law."

We have already concluded that the placing of an assignment of the judgment in escrow did not, on this record, have the legal effect plaintiffs claim; to the extent that the tortious interference claim is based on these same acts, it fails for the same reasons. The trial court did not find that Sharley had a purpose to harm Cooke's business. Its award of punitive damages on the wrongful-execution claim was necessarily based on the finding that the seizure of some nominal or undetermined amount of Cooke's (or his corporation's) property was with wanton and reckless disregard for

Cooke's (or his corporation's) rights; but this is not synonymous with a deliberate purpose to harm the business.

"Defendant's liability may arise from improper motives or from the use of improper means." *Top Service Body Shop,* 283 Or at 209. The "means" employed here alleged to be a tortious interference are the acts of executing on a judgment. That is not per se improper for the simple reason that it is permitted by statute. ORS 23.040(1). The *scope* of the execution was found to be improper to some nominal or undetermined degree. But that minor impropriety seems far less extreme than the conduct held not actionable in *Top Service Body Shop,* 283 Or at 210-12. Moreover, plaintiffs have been awarded damages for that impropriety in their wrongful-execution claim; awarding additional damages for the same injury under the heading of tortious interference would appear to be double recovery.

As for the possibility of improper motives, the most that can be said is that there was conflicting evidence. Plaintiff Cooke urges that we disregard Sharley's testimony to the effect that he executed only to obtain money that he was entitled to as "self-serving and unbelievable." The question of the credibility of the testimony was for the trial court; it is not for this court.

The means of supposed interference were not improper as a matter of law. There is substantial evidence to support the conclusion that the motives for supposed interference were not improper. Plaintiff's tortious-interference claims thus fail.

### III

Plaintiffs make numerous other assignments of error which we will briefly note.

Plaintiffs complain about the form of the trial court's judgment. Citing constitutional provisions, articles and the law of other states, plaintiffs claim the

[143]

trial court should have orally explained its decision on the record and/or sent a letter of explanation and/or stated more detailed findings in its judgment. We hold the form of the judgment sufficient. Had plaintiffs made a timely request for special findings pursuant to ORS 17.431, as they had the right to do, all of the problems they now complain of at great length could have been avoided.

Plaintiffs ask that we increase the trial court's award of punitive damages. However, plaintiffs cite no cases in which an Oregon appellate court has said it has authority to increase punitive damages or has increased punitive damages. We seriously doubt that such authority exists. *See* Or Const, Amended Art VII, § 3. If such authority exists, we decline to exercise it on the facts of this case.

Plaintiffs make three assignments of error addressed to evidentiary rulings of the trial court. We conclude that any error committed on the evidentiary rulings was not prejudicial.

Affirmed.