**James B. MORRIS, Jr., Plaintiff— Appellant,**

v.

**CADENCE DESIGN SYSTEMS, INC., a Cadence Company doing business as Quickturn, Defendant—Appellee.**

**No. 06–35624.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2008.

Filed Aug. 20, 2008.

Jeff D. Brecht, Nena Cook, Sussman Shank Wapnick Caplan & Stiles, Portland, OR, Christopher A. Lavoy, Lavoy & Shernoff, P.C., Phoenix, AZ, for Plaintiff–Appellant.

Sally J. Berens, Gibson Dunn & Crutcher, LLP, Palo Alto, CA, Frederick Brown, Michael A. Sitzman, Gibson Dunn & Crutcher, LLP, San Francisco, CA Richard R. Meneghello, Fisher & Phillips LLP, Portland, OR, for Defendant–Appellee.

Before: GOODWIN, PREGERSON, and REINHARDT, Circuit Judges.

### MEMORANDUM *

Appellant James B. Morris, Jr. appeals the district court's order granting Appellee Cadence Design System's ("Cadence") motion for summary judgment and dismissing Appellant Morris's claims because Morris lacked standing to assert those claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Morris's claims arise out of his contention that Cadence breached certain provisions of a Product Purchase, Manufacturing and Distribution Agreement

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

("Cadence–Simutech Agreement" or "Agreement"), entered into by Cadence and Simutech on November 5, 1999. It is important to note that Morris is not a named party to the Agreement. It is undisputed that Cadence did not consent to any assignment or transfer to Morris of Cadence's rights under the Agreement. Instead, Morris's case is based on the theory that a non-party entity, RaveSim, assigned to Morris "by operation of law" the right to sue Cadence.

We review the factual and procedural history. In 1995, Morris founded and became the chief executive officer ("CEO") of Simutech, a Beaverton, Oregon-based high technology company. In November 1999, Simutech entered into the Cadence–Simutech Agreement to co-develop and market a type of computer hardware called an emulator. Under the Cadence–Simutech Agreement, Simutech gave Cadence certain rights to purchase Simutech's hardware prototyping system and certain rights to resell that system, and granted Cadence a manufacturing license for related products. The Cadence–Simutech Agreement expressly prohibited either of the two contracting parties from assigning or transferring any rights under the Agreement without the express, written consent of the other party. ER 84. The Agreement was subject to some exceptions, one of which was, where an assignment is made "in connection with the transfer of all, or a substantial portion[ ] of [one party's] assets," then consent by the other party is not required. *Id.*

In March 2001, Cadence advised Simutech that it would no longer invest in Simutech. Simutech started to steadily "drift[ ] toward insolvency." In April 2001, Simutech secured a loan from a Cayman Islands-based company, Kirnaf, Ltd. ("Kirnaf"). As part of that loan agreement, Simutech pledged to Kirnaf a security interest in and a lien on all of Simutech's assets. In June 2001, Cadence unveiled the *Palladium* emulator. Morris immediately realized that the *Palladium* emulator would be in direct competition with Simutech's *RAVE* emulator. Morris, the Founder and CEO of Simutech, approached Simutech's Board of Directors (the "Board") about bringing a lawsuit against Cadence. The Board declined to do so.

In August 2001, Kirnaf gave Simutech an additional bridge loan in the amount of $500,000. According to Morris, the Kirnaf funding was, however, "too little, too late." In September 2001, Simutech publicly announced that it had failed to secure the financing that would have enabled it to carry on its business. Simutech laid off all of its employees and shut its doors.

In October 2001, when Simutech was unable to pay back Kirnaf's loan, Kirnaf demanded payment and commenced foreclosure proceedings against Simutech. Kirnaf then purchased all of Simutech's assets at a public auction and transferred them to a newly formed entity, RaveSim. Morris sued Simutech for an unpaid bonus and personal debt that he had incurred on Simutech's behalf. Morris obtained a default judgment against Simutech and then sued RaveSim to collect on that judgment. Morris and RaveSim settled that lawsuit and entered into a Settlement Agreement (the "Settlement Agreement").

The Settlement Agreement stated that RaveSim would be obligated to assign to Morris a claim against Cadence if, and only if, the following four conditions precedent all took place: (1) Morris provided RaveSim with information on the claims that he believed existed; (2) RaveSim de-

termined that it would not pursue a claim against Cadence; (3) an independent assessment from a mutually-selected, neutral third party determined that a valid claim existed; and (4) RaveSim still declined to bring suit against Cadence.[1]

The district court correctly concluded that the first two conditions were met: (1) Morris did provide information to RaveSim that he believed supported a claim; and (2) after reviewing that information, RaveSim declined to sue Cadence. As to the third condition precedent, however, the district court found no evidence in the record of a third-party assessment. Morris testified that he never worked with RaveSim or Kirnaf to select a third-party assessor. He also testified that he never received or obtained from RaveSim an assignment of the right to sue Cadence following the execution of the Settlement Agreement. Because RaveSim and Morris never mutually selected a third-party assessor, the third condition precedent was not satisfied, thereby obviating the need to satisfy the fourth (that RaveSim, upon obtaining information from the third-party assessor, declined again to sue Cadence).

Morris contends that the Settlement Agreement obviated the requirement that he obtain formal, written assignment of RaveSim's claim against Cadence. A July 2003 letter from RaveSim and Kirnaf's attorney to Morris stated: "we write to notify you that after thorough and careful consideration, RaveSim and Kirnaf each have decided not to file a legal action against Cadence .... if you desire to commence an action in your own name, please have your attorney contact us regarding

assignment, indemnity in favor of RaveSim and Kirnaf and other related issues." Neither Morris nor his attorney ever acted on this instruction. Still, Morris argues that RaveSim's failure to seek a third-party assessment effectively assigned to him the Cadence claim "by operation of law."

In February 2004, Morris's attorney contacted RaveSim stating that "[i]t is now urgent that the assignment be completed." RaveSim responded: "Morris is not entitled to an assignment of any potential claim that RaveSim may have against [Cadence], absent a finding by a third party that a viable claim exists." Neither Morris nor RaveSim sought third-party assessment of any valid claims. In August 2004, Morris advised RaveSim that he had nonetheless filed a claim against Cadence. RaveSim responded that it "remain[ed] unwilling ... to assign any possible claim" to Morris.

In short, Morris contends that because RaveSim neither sued Cadence nor sought a third-party assessment, per the Settlement Agreement, RaveSim effectively "assigned" the Cadence claim to Morris "by operation of law."

The district court disagreed and granted Cadence's motion for summary judgment. We review *de novo* the district court's award of summary judgment. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999). Summary judgment is appropriate when a mixed question of law and fact involved undisputed underlying facts. *See Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir.2003).

■ First, contract law requires that conditions precedent be met before one

---

1. If and when RaveSim assigned to Morris its rights against Cadence, Morris was then required by the Settlement Agreement to protect RaveSim by indemnifying it against all

costs and attorneys' fees that RaveSim incurred from any lawsuit and any claims brought by Cadence in response to such action.

party to a contract is entitled to performance by the other party to the contract. *Porter v. Meier Chevrolet–Buick, Inc.,* 254 Or. 482, 461 P.2d 527, 528 (1969) ("Until the condition was met the contract did not come into operative existence."); *Springfield Int'l Rest., Inc. v. Sharley,* 44 Or.App. 133, 605 P.2d 1188, 1192 (1980) ("[a] contract to assign a right in the future is not an assignment."). RaveSim was required to assign the claim if, and only if, the requirements of the Settlement Agreement were fully satisfied. As the district court correctly concluded, the four conditions precedent were never met and Morris's right to an assignment from RaveSim never accrued.

Second, Morris argued that he was entitled to an assignment from RaveSim of the right to sue Cadence "as a matter of law." The district court, however, correctly concluded that the Settlement Agreement "clearly and unambiguously states" that "RaveSim *will assign* its right to pursue ... a claim against Cadence to Morris and Morris will have the right to pursue the claim and recover any damages from Cadence." Dist. Ct. Op. 14, 2006 WL 1643529. We have held that "the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts." *Britton v. Co–op Banking Group,* 4 F.3d 742, 746 (9th Cir.1993). There is no evidence that RaveSim intended to assign to Morris its claim against Cadence without satisfying the four conditions precedent in the Settlement Agreement.

 Third, Morris's argument that RaveSim's failure to enlist a third party assessor automatically waived the third condition precedent is not supported by law. *Guardian Mgmt., LLC v. Zamiello,* 194 Or.App. 524, 95 P.3d 1139, 1142 (2004), held that "waiver of a legal right requires a clear, unequivocal, and decisive act or inaction of the party demonstrating the party's intention to relinquish the right." [2] Here, RaveSim demonstrated every intention otherwise: it contacted Morris, stated that it would not bring a claim against Cadence, and asked Morris to have his attorney contact RaveSim's *to discuss*— and only to discuss—the possibility of assignment.

As the district court noted, the only authority that Morris cites is an inapposite one. In *Stefansson v. The Equitable Life Assurance Soc'y of the United States,* No. 5:04CV40(DF), 2005 WL 2277486 (M.D.Ga. Sept.19, 2005), the court held that where a claims administrator has not issued a formal benefits determination within 45 days after receiving a claim, the relevant ERISA statute deems the claim denied, the administrative remedies exhausted, and allows the claimant to seek judicial

---

**2.** *Sharley* is instructive. In that case, a buyer of a restaurant, who held a judgment against a third party, agreed with the seller of that restaurant to assign that judgment as part of the purchase of the restaurant. 605 P.2d at 1190. The buyer executed an assignment, which was reviewed by the seller and then placed into escrow pending the closing of the sale of the restaurant. *Id.* The court found that the assignment was only one part of the larger sale, "with the formal delivery of the assignment ... not intended until the transaction closed in escrow; and with closing de-

pendent on numerous conditions that had not yet occurred at the time of execution of the assignment." *Id.* at 1192. Permitting the seller to review the assignment before it was placed into escrow "was not a formal delivery of the assignment to [the seller]." *Id.* Similarly, RaveSim never consummated a "formal delivery" to Morris of the right to sue Cadence. Instead, the Settlement Agreement provided only that "RaveSim *will assign* its right" if the conditions precedent were all met. ER 436–37 (emphasis added).

review of the claim. *Id.* at \*9–10. Morris's reliance on *Stefansson* is misplaced. ERISA explicitly provides that "[i]f notice of the denial of a claim is not furnished [within 90 days], the claim shall be *deemed denied.*" *Id.* at \*9 n. 15. The Settlement Agreement at issue here contains no such provision. The district court therefore correctly concluded that Morris's waiver argument fails.

■ Lastly, the district court correctly concluded that Morris's reliance on the exception to the Agreement's general statement of nonassignability is also misplaced. The Agreement states that no consent to assignment of any right is required where the assignment is "in connection with the transfer of all, or a substantial portion[ ] of [the assignor's] assets." Morris argues that the transfer of the right to sue Cadence that passed from Simutech to Kirnaf to RaveSim to Morris falls under one of the Agreement's exceptions, thereby permitting Morris's third-party enforcement of the Cadence–Simutech Agreement and conferring upon him standing to bring this suit. Cadence does not dispute that there was a valid transfer of assets between Simutech and RaveSim. As the district court correctly noted, there is no evidence that RaveSim ever transferred any assets to Morris in connection with the purported assignment.

Absent evidence that RaveSim explicitly assigned any rights to Morris; that RaveSim waived any of the conditions precedent in the Settlement Agreement; or that the asset-transfer exception to the Simutech–Cadence Agreement was triggered (which it was not), it is clear that the district court correctly granted Cadence's motion for summary judgment against Cadence.

**AFFIRMED.**